1  LINDA CLAXTON, State Bar No. 125729
   linda.claxton@ogletreedeakins.com
2  CHRISTOPHER W. DECKER, State Bar No. 229426
   christopher.decker@ogletreedeakins.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  633 West Fifth Street, 53rd Floor
   Los Angeles, California 90071
5  Telephone: (213) 239-9800
   Facsimile:  (213) 239-9045
6
7  Attorneys for Defendants
   ROYAL BANK OF CANADA, RBC CAPITAL MARKETS
   CORPORATION (incorrectly named and sued as "RBC WEALTH
8  MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER,
   INC."), and THE ROYAL BANK OF CANADA US WEALTH
9  ACCUMULATION PLAN

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  STEVEN BENHAYON, | Case No. CV08-06090 FMC(AGRx) |
| 15              Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR BENEFITS UNDER THE ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN** |
| 16      v. | |
| 17  ROYAL BANK OF CANADA, a Canadian company, business form unknown; RBC WEALTH | |
| 18  MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER, INC., | |
| 19  business form unknown; THE ROYAL BANK OF CANADA US WEALTH | |
| 20  ACCUMULATION PLAN, formerly known as RBC Dain Rauscher Wealth | Date:      None Set |
| 21  Accumulation Plan; and, DOES 1 through 20, | Time:      None Set |
| | DJ:        Florence-Marie Cooper |
| 22 | Courtroom: (Roybal) 750 |
| | MJ:        Alicia G. Rosenberg |
| 23              Defendants. | Courtroom: (Spring) 23 |
| | Trial Date: February 16, 2010 |

24

25

26

27

28

                                    CASE NO. CV08-06090 FMC(AGRx)
MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PL.'S CLAIM
      FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

7512360_6.DOC

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL BACKGROUND .................................................................2

    A.      The Wealth Accumulation Plan .................................................2

    B.      Vesting Provisions......................................................................4

    C.      Benhayon's Participation in the WAP ........................................5

    D.      Benhayon's Request for Accelerated Vesting ...........................7

III.    ARGUMENT.........................................................................................8

    A.      The Standard for Summary Judgment........................................8

    B.      The Standard of Review .............................................................9

    C.      The Administrator's decision was not an abuse of discretion and
        must be upheld. ........................................................................10

        1.      The WAP vests the Committee with discretion.......................10

        2.      The facts support the Committee's decision............................10

        3.      The arguments presented to the Committee were meritless. ....11

        4.      The only vesting provisions applicable to Benhayon's
           WAP account were those set by the Committee......................13

        5.      The Committee's decision was reasonable and supported
           by the record. .........................................................................14

IV.     CONCLUSION ...................................................................................15

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S  CLAIM
FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

7512360_6.DOC

1

## TABLE OF AUTHORITIES

2
                                                                    **Page(s)**

3
**FEDERAL CASES**

4

*Abatie v. Alta Life & Health Ins. Co.*

5
   458 F.3d 955 (9th Cir. 2006) ...................................................................9

6

*Anderson v. Liberty Lobby, Inc.*

7
   477 U.S. 242 (1986)...............................................................................8

8

*Atwood v. Newmont Gold Co.*

9
   45 F.3d 1317 (9th Cir. 1995) ...............................................................15

10

*Carr v. First Nationwide Bank*
   816 F. Supp. 1476 (N.D. Cal. 1993) ...................................................13

11

12

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986).............................................................................8

13

14

*Firestone Tire & Rubber Co. v. Bruch*
   489 U.S. 101 (1989) .............................................................................9

15

16

*Ingram v. Martin Marietta Long Term Disability Income Plan*
   244 F.3d 1109 (9th Cir. 2001) ...........................................................10

17

*Johnson v. Trustees of the Western Conference of Teamsters Pension Trust*
   *Fund*

18
   879 F.2d 651 (9th Cir. 1989) ...............................................................9

19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*

20
   475 U.S. 574 ........................................................................................8

21

*McKenzie v. General Telephone Co. of California*

22
   41 F.3d 1310 (9th Cir. 1994) ...............................................................8

23

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability*
   *Income Plan*

24
   85 F.3d 455 (9th Cir. 1996) ...............................................................15

25

26

*Snow v. Standard Ins. Co.*
   87 F.3d 327 (9th Cir. 1996) overruled on other grounds, *Kearney v.*
   *Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) (en banc)..............9

27

28

7512360_6.DOC

*Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan*
   --- F.3d ----, 2009 WL 2004452 (9th Cir. 2009) ..............................................9, 13

*Taft v. Equitable Life Assur. Society*
   9 F.3d 1469 (9th Cir. 1991) ...................................................................................9


**FEDERAL STATUTES**

29 U.S.C. § 1001 *et seq.*......................................................................................1

29 U.S.C. § 1002(2) ..............................................................................................3

29 U.S.C. § 1051(2) ............................................................................................13

29 U.S.C. § 1081(a)(3)........................................................................................13

29 U.S.C. § 1101(a)(1)........................................................................................13


**OTHER AUTHORITIES**

28 C.F.R. 2520.104-23..........................................................................................3

29 C.F.R. § 2520.104-23....................................................................................13

Fed. R. Civ. P. 56(c) ............................................................................................8

CASE NO. CV08-06090 FMC(AGRx)

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S  CLAIM
FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

7512360_6.DOC

I.    **INTRODUCTION**

Plaintiff Steven Benhayon is a former employee of RBC Dain Rauscher, Inc. (a predecessor to Defendant RBC Capital Markets Corporation), who was terminated involuntarily on September 17, 2007 in connection with a reduction-in-force. By this action, Plaintiff asserts various claims arising out of that termination, including a claim under section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, that he was wrongfully denied a distribution of benefits under the Royal Bank of Canada U.S. Wealth Accumulation Plan (the "WAP"). At the Initial Scheduling Conference held on May 4, 2009, counsel agreed, and this Court ordered, that the parties would brief Defendants' dispositive motion regarding this claim separately and in advance of any dispositive motions regarding Plaintiff's other claims for relief. Accordingly, Defendants Royal Bank of Canada, RBC Capital Markets Corporation and The Royal Bank of Canada U.S. Wealth Accumulation Plan hereby submit this Memorandum of Points and Authorities In Support Of Their Motion For Partial Summary Judgment On Plaintiff's Claim For Benefits Under The Royal Bank of Canada U.S. Wealth Accumulation Plan.

For the reasons set forth below, there is no genuine dispute with respect to any material fact relating to Plaintiff's claim for benefits under the WAP and Defendants are entitled to judgment on this claim as a matter of law. Under the terms of the WAP, all decisions regarding claims for benefits are entrusted to the WAP Committee, which has full discretionary authority to make all such determinations and to construe the terms of the WAP. Accordingly, this Court's role is limited to reviewing the WAP Committee's decision for an abuse of discretion based solely on the administrative record which was presented to the committee at the time it made its decision.

Plaintiff cannot possibly establish that the WAP Committee abused its discretion in denying his claim for benefits. It is undisputed that Plaintiff received a

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S CLAIM FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

1    distribution of $1,161,876.79 from the WAP shortly before his termination and that

2    the only amounts which remained credited to his WAP account at termination

3    represented unvested employer contributions.  Under the express terms of the WAP,

4    amounts which are unvested at termination are deemed forfeited, unless the

5    termination is the result of death, a qualifying disability or an approved retirement.

6    In presenting his claim to the WAP Committee, Plaintiff never argued that he

7    qualified for one of those exceptions to the forfeiture rule nor could he, as it is

8    undisputed that he was terminated involuntarily in connection with a reduction-in-

9    force.  Thus, Plaintiff had no right to the amounts credited to his account, but

10   unvested, at the time of his termination and the WAP Committee properly denied his

11   claim.  Given these undisputed facts, this Court must uphold the WAP Committee's

12   decision under any standard of review and especially so under the deferential

13   standard of review which applies here.  Defendants' Motion should therefore be

14   granted.

15   **II.    FACTUAL BACKGROUND**

16        **A.    The Wealth Accumulation Plan**

17        The Royal Bank of Canada U.S. Wealth Accumulation Plan is a non tax-

18   qualified, deferred compensation plan for a select group of management or highly-

19   compensated employees of the Royal Bank of Canada and its participating

20   subsidiaries (collectively "RBC").  (Sikich Decl.[1] ¶ 8, Exh. G (2007 WAP Plan

21   Document[2] § 1.1, p. 22).)  For purposes of this Motion,[3] Defendants do not dispute

---

[1] "Sikich Decl." refers to the Declaration of Gabriela Sikich, filed concurrently herewith.

[2] All citations in this Memorandum of Points and Authorities are to the version of the WAP Plan Document dated November 1, 2007 and included as Exhibit G to the Declaration of Gabriela Sikich, filed concurrently herewith.  In each case, identical or substantially identical language appears in the corresponding provision in the version of the WAP Plan Document dated November 1, 2006 and included as Exhibit H to the Declaration of Gabriela Sikich, filed concurrently herewith.  Since there are no differences between the two versions of the plan document which are material to this Motion, the Court need only consider the later version.

[3] Should the Court deny RBC's Motion and the case proceed to trial, RBC reserves the right to argue that the WAP is not an "employee benefit plan" within the meaning of ERISA.

2          CASE NO. CV08-06090 FMC(AGRx)

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S CLAIM FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

7512360_6.DOC

1   Plaintiff's allegation that the WAP is an "employee benefit plan" within the meaning

2   of Section 3(2) of ERISA, 29 U.S.C. §1002(2).  (See Complaint ¶ 4.)

3        Benefits under the WAP are unfunded and are paid as needed solely from the

4   general assets of the Royal Bank of Canada or one of its participating subsidiaries.

5   (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document §§ 2.4 & 8.2, pp. 35-36).)  In

6   addition, employees are eligible to participate in the WAP only if they are part of

7   "the select group of management or highly compensated employees of the Company

8   or its Participating Subsidiaries whose compensation or production otherwise

9   exceeds a level deemed appropriate by the Committee and who are invited to become

10   participants by the Committee."  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan

11   Document § 2.1(a), p. 24-25).)  Accordingly, on March 13, 2001, a statement was

12   filed with the United States Department of Labor registering the WAP as a "top-hat"

13   plan within the meaning of 28 C.F.R. 2520.104-23.  (Sikich Decl. ¶ 18, Exh. P, p.

14   114.)

15        The WAP is a "defined contribution" plan under which amounts are credited

16   to a participant's individual account until distribution pursuant to the participant's

17   advance election, or until distribution is required under the terms of the WAP.  The

18   amounts credited to a participant's individual account consist of: (i) voluntary

19   deferrals of cash compensation ("Voluntary Deferred Compensation"); (ii)

20   mandatory deferrals of cash compensation ("Mandatory Deferred Compensation"),

21   and (iii) company matching contributions and bonuses ("Company Contributions").

22   (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document §§ 2.2, 2.3 & 2.6, pp. 25-26).)

23   Participants may elect to have their account balances deemed invested in one or more

24   of several hypothetical investments offered under the WAP.  (Sikich Decl. ¶ 8, Exh.

25   G (2007 WAP Plan Document § 2.4; p. 25.)  Earnings on these hypothetical

26   investments are then credited to the participant's account based on the market

27   performance of the deemed investment.  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan

28   Document §§ 3.1(ii) &  3.3(ii), p. 27, 28).)

7512360_6.DOC

1    The WAP is administered by a committee established under the WAP Plan

2  Document (the "WAP Committee").  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan

3  Document § 7.1; p. 34).)  The WAP Committee has the full power and sole

4  discretionary authority to make all determinations provided for in the Plan.  (Sikich

5  Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 7.1; p. 34).)  Any participant who

6  disagrees with any determination that has been made for payment under the WAP

7  may present a claim to the Committee and, if the claim is denied, may request a

8  further review of the claim.  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document

9  §§ 7.2-7.4; pp. 34-35).)  All decisions on claims and reviews of denied claims are

10  made by the WAP Committee.  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan

11  Document § 7.5; p. 35.)

12  **B.  Vesting Provisions**

13    Participants' Voluntary Deferred Compensation and any deemed investment

14  earnings on those contributions are always 100% vested.  (Sikich Decl. ¶ 8, Exh. G

15  (2007 WAP Plan Document § 4.1, p. 28).)  However, Mandatory Deferred

16  Compensation and Company Contributions (and any investment earnings thereon)

17  are subject to a vesting schedule and the potential for forfeiture.  The WAP provides

18  that "Mandatory Deferred Compensation and Company Contributions in a

19  participant's account shall vest on the date or dates determined by the Committee, in

20  its sole discretion."  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 4.2; p.

21  28).)  Except as expressly set forth in the WAP Plan Document, "all Company

22  Contributions and Mandatory Deferred Compensation that are not vested on the

23  participant's employment termination date shall be deemed forfeited, and such

24  participant's account shall be appropriately reduced."  (Sikich Decl. ¶ 8, Exh. G

25  (2007 WAP Plan Document § 4.5; p. 29).)  The only exceptions to this rule in the

26  WAP Plan Document are that:

27    • Mandatory Deferred Compensation and Company Contributions will vest

28      immediately upon the death or qualifying disability of a participant (Sikich

4

CASE NO. CV08-06090 FMC(AGRx)

1     Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 4.2(i), p. 28));

2     •  Mandatory Deferred Compensation and Company Contributions will vest

3        immediately upon the retirement of a participant who has satisfied the

4        requirements for retirement under the WAP (Sikich Decl. ¶ 8, Exh. G (2007

5        WAP Plan Document § 4.2(ii); pp. 28-29)); and

6     •  Mandatory Deferred Compensation (but not Company Contributions) will

7        vest in full in the event a participant ceases to be employed due to an

8        organization restructuring (as determined in the sole discretion of the WAP

9        Committee) (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 4.4; p.

10        29)).

11     **C.**    **Benhayon's Participation in the WAP**

12        Benhayon participated in the WAP for several years during his employment

13 with RBC and its predecessors.  At the beginning of the 2007 plan year, Mr.

14 Benhayon's WAP account was credited with a notional balance of $1,404,301.24.

15 (Sikich Decl. ¶ 10, Exh. I (Retirement Savings Statement for 1/1/2007 – 12/31/2007,

16 p. 56, 58, 59).)  Of this amount, $1,161,876.79, representing the full amount of

17 vested contributions, was distributed to Mr. Benhayon during 2007.  (Sikich Decl. ¶

18 10, Exh. I (Retirement Savings Statement for 1/1/2007 – 12/31/2007, p. 56, 58).)

19 After adding certain credits for further contributions and investment earnings and

20 subtracting certain administrative fees, Benhayon's WAP account held a notional

21 balance of $334,220.03 at the time of his employment with RBC terminated on

22 September 17, 2007.  (Sikich Decl. ¶ 10, Exh. I (Retirement Savings Statement for

23 1/1/2007 – 12/31/2007, p. 56, 58, 59).)

24        This remaining notional balance in Benhayon's WAP account consisted

25 entirely of unvested Company Contributions and the earnings thereon.  As detailed in

26 Benhayon's Account Summary for 2007, the $334,220.03 remaining in his account

27 was entirely attributable to an "Employer Match" contribution for plan year 2003

28 and "FICM WAP Bonus" contributions for plan years 2003 through 2006.  (Sikich

CASE NO. CV08-06090 FMC(AGRx)

7512360_6.DOC

1   Decl. ¶ 10, Exh. I (Retirement Savings Statement for 1/1/2007 – 12/31/2007, p. 57).)

2   The Retirement Savings Statement further reflects that the "Employer Match"

3   contribution was subject to four-year cliff vesting.  ((Sikich Decl. ¶ 10, Exh. I

4   (Retirement Savings Statement for 1/1/2007 – 12/31/2007, p. 57).)  The vesting

5   schedule for the "FICM WAP Bonus" is described in a separate document, the

6   Summary of Provisions for FICM Sales Employees, which similarly provides for

7   four-year cliff vesting.  (Sikich Decl. ¶ 17, Exh. O (Summary of Provisions for US

8   Debt Markets Commissioned Employees (Plan Years 2003–2006), pp. 100, 105, 110,

9   115).)  Under the terms of the WAP, unless otherwise provided by the WAP

10  Committee, all vesting periods begin on January 1 of the plan year following the plan

11  year for which the contribution was made.  (Sikich Decl. ¶ 8, Exh. G (2007 WAP

12  Plan Document § 4.2, p. 47).)  Accordingly, the Employer Match contribution for

13  plan year 2003 was scheduled to vest January 1, 2008, and the FICM WAP Bonus

14  contributions for plan years 2003-2006 were scheduled to vest on January 1st of

15  years 2008-2011, respectively.  (Sikich Decl. ¶ 17, Exh. O (Summary of Provisions

16  for US Debt Markets Commissioned Employees (Plan Years 2003–2006), pp. 100,

17  105, 110, 115).)

18          Benhayon's employment with RBC ended on September 17, 2007 in

19  connection with a reduction-in-force in RBC's Capital Markets Fixed Income

20  Products Group, where Benhayon was a Managing Director of Institutional

21  Sales/Fixed Income Sales.  (Decker Decl.[4] ¶ & Exh. A (Pl. Depo. at 103:15-19,

22  106:20-22, 120:3-9).)  At that time, the only amounts remaining in his WAP account

23  were unvested.  These amounts were forfeited, as provided in section 4.5 of the WAP

24  Plan Document.   (Sikich Decl. ¶ 11, Exh. J (Retirement Savings Statement for

25  1/1/2008 – 12/31/2008; pp. 61, 63).)

26

27

28  [4] "Decker Decl." refers to the Declaration of Christopher W. Decker, filed concurrently herewith.

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S  CLAIM
FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

7512360_6.DOC

**D.     Benhayon's Request for Accelerated Vesting**

On November 9, 2007, Benhayon's counsel, Kari M. Myron, wrote to certain representatives of RBC, requesting an increase in the amount of severance pay offered to Benhayon and distribution of the balance remaining in Benhayon's WAP account.  (Sikich Decl. ¶ 2, Exh. A (Letter from K. Myron to A. Burke and T. McDonald dated November 9, 2007; pp. 5-7).)  Three days later, Benhayon's counsel wrote to the US Retirement Benefits Manager with responsibility for administering the WAP, requesting that "the WAP Committee . . . accelerate[] vesting of any/all funds on deposit in [Benhayon's] WAP account, which are estimated to be $335,000.00."  (Sikich Decl. ¶ 3, Exh. B (Letter from K. Myron to G. Sikich, dated November 12, 2007, pp. 8-9).)  Todd Schnell, counsel for RBC, responded to Mr. Benhayon's counsel by letter dated November 15, 2007, informing her, among other things, that "the terms of the Wealth Accumulation Plan" do not provide for the accelerated vesting of employer contributions that you seek."  (Sikich Decl. ¶ 4, Exh. C (Letter from T. Schnell to K. Myron, dated November 15, 2007, p. 10-11).)

On December 7, 2007, the WAP Committee met and reviewed Benhayon's request for accelerated vesting of the amount credited to his WAP account at the time of his termination.  After reviewing the relevant provisions of the WAP Plan Document, the Committee denied Mr. Benhayon's request.  Sikich Decl. ¶ 13, Exh. L (Minutes of WAP Committee Meeting, December 7, 2007, p. 68).)  Benhayon's counsel was advised of the Committee's determination by letter dated December 11, 2007.  (Sikich Decl. ¶ 5, Exh. D (Letter from T. Schnell to K. Myron, dated December 11, 2007, p. 12).)  The letter also advised Benhayon of his right to seek review of the Committee's decision pursuant to section 7.4 of the WAP Plan Document.  (Id.)

By letter dated February 6, 2008, Benhayon's counsel submitted a Request For Reconsideration Of Denial Of Accelerated Vesting And Distribution.  (Sikich Decl.

¶ 6, Exh. E (Letter from K. Myron to T. Schnell & G. Sikich, dated February 5, 2008, pp. 13-18).)  At its meeting on April 8, 2008, the WAP Committee considered Benhayon's appeal of its December 7, 2007 decision.    Following a review, the Committee denied the request to accelerate vesting of the employer contributions in Benhayon's WAP account.  (Sikich Decl. ¶ 14, Exh. M (Minutes of WAP Committee Meeting, April 8, 2008, p. 71).)  Ms. Myron was notified of that decision by a letter from Mr. Schnell dated April 9, 2008.  (Sikich Decl. ¶ 7, Exh. F (Letter from T. Schnell to Kari Myron dated April 9, 2008, p. 18.)  This suit followed.

## III.   **ARGUMENT**

### A.    **The Standard for Summary Judgment**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Mere allegations in a pleading are not enough to create a genuine issue of material fact as against a showing of evidence contrary to the allegations.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment . . . ") (emphasis in the original).

On issues where the movant will not have the burden of proof at trial, the moving party meets its burden simply by showing that there is an "absence of evidence" to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has made a showing that there is no genuine issue of material fact, the non-moving party must then present specific facts creating such an issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87(1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Claims for benefits brought under ERISA are particularly appropriate for summary judgment because "the district court may review only evidence which was presented to the plan trustees or administrator."  *McKenzie v. General Telephone Co. of California*, 41 F.3d 1310, 1316 (9th Cir. 1994) (internal citation omitted).  As

1  demonstrated below, there is no genuine dispute with respect to any material fact

2  relating to Plaintiff's claim for benefits under the WAP.  Accordingly, Defendants

3  are entitled to summary judgment on that claim as a matter of law.

4      **B.    The Standard of Review**

5      The WAP unambiguously vests the WAP Committee with discretionary

6  authority to determine eligibility for benefits under the plan and construe plan terms.

7  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document §§ 7.1-7.5, pp. 34-35).)  In

8  such cases, the court's only role is to review the plan administrator's decision for an

9  abuse of discretion.  *Abatie v. Alta Life & Health Ins. Co.*, 458 F.3d 955, 963-65 (9th

10  Cir. 2006); *Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits*

11  *Plan*, --- F.3d ----, 2009 WL 2004452 at *1, *5 (9th Cir. 2009) (abuse of discretion

12  standard applies to top-hat plans); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

13  101, 115 (1989).  Under the abuse of discretion standard, the administrator's

14  "interpretation will not be disturbed if reasonable."  *Firestone Tire & Rubber Co. v.*

15  *Bruch*, 489 U.S. 101, 114-15 (1989).

16      An administrator will be found to have abused its discretion only if the

17  decision is rendered "without any explanation, . . . [and] construe[s] provisions of the

18  plan in a way that clearly conflicts with the plain language of the plan," *Johnson v.*

19  *Trustees of the Western Conference of Teamsters Pension Trust Fund*, 879 F.2d 651,

20  654 (9th Cir. 1989), or the administrator relied on "clearly erroneous findings of fact

21  in making benefit determinations."  *Taft v. Equitable Life Assur. Society*, 9 F.3d

22  1469, 1473 (9th Cir. 1991).  The administrator's decision will be affirmed, as long as

23  there is "substantial evidence to support the decision," i.e. that there is "relevant

24  evidence [that] reasonable minds might accept as adequate to support a conclusion

25  even if it is possible to draw two inconsistent conclusions from the evidence." *Snow*

26  *v. Standard Ins. Co.*, 87 F.3d 327, 332 (9th Cir. 1996) overruled on other grounds,

27  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) (en banc).

28

7512360_6.DOC

**C.    The Administrator's decision was not an abuse of discretion and must be upheld.**

The undisputed material facts and the applicable law in this case demonstrate conclusively that the Committee's decision to refuse to accelerate the vesting schedule with respect to the Company Contributions in Plaintiff's WAP Account was neither arbitrary nor capricious, nor did it constitute an abuse of discretion. The Committee correctly determined the relevant facts and correctly interpreted the terms of the WAP's plan document. Benhayon was not vested in the Company Contributions remaining in his account at termination, and he was not eligible to have those contributions vested under the terms of the WAP.

**1.    The WAP vests the Committee with discretion.**

The terms of the WAP Plan Document provide that the Committee (as the WAP Plan's Administrator) "has the full power and sole discretionary authority to make all determinations provided for in the Plan, including, without limitation, promulgating rules and regulations as the Committee considers necessary or appropriate for the implementation and management of the Plan . . . ." (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 7.1, p. 34).)(emphasis added).) The "determinations provided for in the Plan" include "all decisions on claims and review of denied claims" which decisions are explicitly entrusted to the Committee. (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 7.5, p. 35).) Thus, the plan language unambiguously vests the Committee with "discretionary authority to grant or deny benefits under [the] plan," which all that is required to invoke deferential judicial review. *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1113-14 (9th Cir. 2001). Accordingly, the applicable standard of review in this case is for abuse of discretion.

**2.    The facts support the Committee's decision.**

The undisputed evidence is that WAP participants' rights in Company Contributions to the WAP in 2003 and each year thereafter were subject to four-year

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S CLAIM FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

7512360_6.DOC

1  "cliff" vesting.  The 2003 Company Contributions to the WAP were scheduled to

2  vest on January 1, 2008; the 2004 Company Contributions on January 1, 2009; the

3  2005 Company Contributions on January 1, 2010; and so on.  (Sikich Decl. ¶ 17,

4  Exh. O (Summary of Provisions for US Debt Markets Commissioned Employees

5  (Plan Years 2003–2006), pp. 100, 105, 110, 115).)  Thus, unless Benhayon's

6  termination somehow qualified for some exception, the express terms of the WAP

7  mandated forfeiture of the unvested Company Contributions in his WAP account

8  made in or after 2003.

9        The WAP provides for certain limited exceptions to the general forfeiture

10  provision.  A Participant's rights in Company Contributions vest upon his or her

11  death or disability, or upon separation from employment (including upon retirement)

12  if the Participant executes certain agreements with the company.  (Sikich Decl. ¶ 8,

13  Exh. G (2007 WAP Plan Document § 4.2(i)-(ii), pp. 28-29).)  There was no evidence

14  presented in the administrative record from which the Committee could have inferred

15  that Benhayon died, was disabled, or entered into any of the requisite agreements

16  necessary to accelerate the vesting schedule applicable to the Company

17  Contributions in his WAP Account.  (Sikich Decl. ¶ 16, Exs. A-N.)  Nothing in the

18  facts presented to the Committee supported a determination that Benhayon was

19  entitled to vest in the Company Contributions in his WAP account.  To the contrary,

20  the factual record presented to the Committee fully supported its decision to decline

21  to accelerate the vesting of the Company Contributions in Benhayon's WAP

22  account.  Accordingly, Benhayon cannot prevail on his claim for those Company

23  Contributions which were unvested at the time of his termination and summary

24  adjudication of his claim for benefits under the WAP is proper.

25        **3.    The arguments presented to the Committee were meritless.**

26        In the correspondence relating to Benhayon's request for accelerated vesting

27  of his interest in the Company Contributions, his counsel makes frequent (albeit

28  inaccurate) references to Benhayon's account statement and the WAP's 2003 annual

1  summary.  In her November 9, 2007 letter, Ms. Myron asserts that the failure to

2  distribute the remaining balance in Benhayon's account was "[c]learly . . . an

3  oversight . . . given that Mr. Benhayon's separation was not only involuntary, but

4  also, without cause." (Sikich Decl. ¶ 2, Exh. A (Letter from K. Myron to A. Burke

5  & T. McDonald, November 9, 2007; p. 7).)  In her February 6, 2008 letter, Ms.

6  Myron sets forth a long (but inaccurate) description of the WAP's provisions

7  regarding distribution of Participants' accounts upon termination of employment

8  with RBC.  (Sikich Decl. ¶ 6, Exh. E (Letter from K. Myron to T. Schnell & G.

9  Sikich, February 6, 2008 , pp. 15-17).)   None of these arguments, however,

10  addresses the determinative question presented to the Committee—whether the

11  Company Contributions in Benhayon's WAP account were subject to accelerated

12  vesting under the terms of the WAP.

13         The unequivocal answer to that question is no.  Interestingly, the discussion in

14  Ms. Myron's February 6, 2008 letter specifically states:  "Absent 'Forfeiture', Mr.

15  Benhayon is Entitled to Distribution upon Separating from RBC."  (Sikich Decl. ¶ 6,

16  Exh. E (Letter from K. Myron to T. Schnell & G. Sikich, February 6, 2008 , p. 14).)

17  This statement accurately qualifies the remaining discussion of Ms. Myron's letter,

18  which omits any reference to, and fails completely to address, Section 4.5 of the

19  Plan, which provides that "[e]xcept as otherwise specifically set forth herein, all

20  Company Contributions and Mandatory Deferred Compensation that are not vested

21  on the participant's employment termination date shall be deemed forfeited, and such

22  participant's account shall be appropriately reduced." (Sikich Decl. ¶ 8, Exh. G

23  (2007 WAP Plan Document § 4.5, p. 29).)  Notwithstanding the entreaties of his

24  counsel, the facts before the Committee demonstrate that Benhayon failed to meet

25  any of the criteria that might have permitted the Committee to vest him in the

26  Company Contributions in his WAP account on the date of his termination.

27

28

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S CLAIM FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

7512360_6.DOC

4.    **The only vesting provisions applicable to Benhayon's WAP account were those set by the Committee.**

The WAP is a so-called "top hat" plan under ERISA.  ERISA defines a top hat plan as one that is unfunded, and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.   29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1)).

Benefits under the WAP are unfunded.  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document §§ 2.4 & 8.2, pp. 35-36).)  Participation in the WAP is explicitly limited to "the select group of management or highly compensated employees of the Company or its Participating Subsidiaries whose compensation or production otherwise exceeds a level deemed appropriate by the Committee and who are invited to become participants by the Committee." (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 2.1(a), p. 24).)  Likewise, a statement regarding the WAP's status as a top hat plan was filed with the U.S. Department of Labor, in accordance with the applicable regulations, on March 13, 2001.  (Sikich Decl. ¶ 18, Exh. P, p 114.); 29 C.F.R. sec. 2520.104-23.

ERISA governs the administration of top hat plans, including claims for benefits.  *See Sznewajs*, --- F.3d ----, 2009 WL 2004452 at *4-*5; *Carr v. First Nationwide Bank*, 816 F. Supp. 1476 (N.D. Cal. 1993).  However, because of the unique limitations on participation (to select and highly compensated employees), top hat plans are exempt from many of ERISA's mandates, including its participation, vesting, funding, and fiduciary provisions.  29 U.S.C. § 1101(a)(1). Because nothing in ERISA required the WAP to impose or comply with any particular vesting schedule, the only applicable schedule is the four-year cliff vesting schedule contained in the annual statements.  Thus, because Benhayon's employment with RBC was terminated in September of 2007, he did not vest in any of the Company Contributions in his WAP account made in or after 2003.  Nothing in ERISA could possibly be construed to dictate a contrary conclusion.

CASE NO. CV08-06090 FMC(AGRx)

7512360_6.DOC

## 5.   The Committee's decision was reasonable and supported by the record.

The terms of the WAP and the record presented to the Committee amply support its decision.  Indeed, not only was the Committee's decision based on a reasonable construction of the terms of the WAP's plan Document, it was the only reasonable construction and thus must be upheld under *any* standard of review.  As discussed above, the terms of the WAP's plan document provide for only three situations in which otherwise unvested Company Contributions may become vested – upon death, a qualifying disability or an approved retirement.  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 4.2(i)-(ii), pp. 28-29).)  There is no evidence in the record that Benhayon separated from employment due to death, disability or approved retirement.  Nor could there be, as it is undisputed that Benhayon did not separate from employment for any of those reasons.  (Decker Decl. ¶ 2 & Exh. A (Pl. Depo. 190:23-191:4 & 191:25-192:4).)  Moreover, an approved retirement requires that the Participant execute certain agreements with RBC.  (Sikich Decl. ¶ 8, Exh. G (2007 WAP Plan Document § 4.2(i)-(ii), pp. 28-29).)  There is no evidence in the administrative record that Benhayon ever executed such an agreement, and thus the Committee had no basis under the WAP's terms to accelerate the vesting schedule with respect to the Company Contributions in his account.  (Sikich Decl. ¶ 16 & Exs. A-N.)

It is abundantly clear that not only was the Committee's decision in accord with the written terms of the WAP's Plan Document, a contrary decision with respect to Mr. Benhayon's request would be patently indefensible.  The WAP quite explicitly requires forfeiture of amounts which are unvested at the time a participant's employment ends, except under limited circumstances not applicable here.  Nothing in the terms of the WAP's Plan document provides for accelerated vesting with respect to the Company Contributions in Benhayon's WAP account under the circumstances presented.  In order to give Benhayon the relief he sought,

14

7512360_6.DOC

1  the Committee would have had to act in a manner that would conflict with the

2  WAP's explicit terms.  Such an act would itself have constituted an abuse of

3  discretion.  *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1323 (9th Cir. 1995);

4  *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income*

5  *Plan*, 85 F.3d 455, 458 (9th Cir. 1996)  (a plan administrator abuses its discretion by

6  construing plan in a way that conflicts with the plan's plain language).

7       The Committee interpreted the terms of the WAP in the only manner

8  consistent with the plain language of the plan document.  Defendants respectfully

9  submit that the Committee's decision, refusing to give Benhayon a benefit to which

10  he was not entitled, cannot possibly be construed to have constituted an abuse of the

11  discretion conferred.  Nor could this Court reach a different conclusion even if it

12  were to review Benhayon's claim *de novo* (which it should not).  The Committee's

13  decision must therefore be upheld and summary adjudication entered as to

14  Benhayon's claim for benefits under the WAP.

15  **IV.   CONCLUSION**

16       For the foregoing reasons, Defendant is entitled to judgment as a matter of law

17  on Plaintiff's claim for benefits under the WAP.  Plaintiff has not shown, nor can he

18  show, that the determination by the plan administrator was an abuse of discretion

19  because the decision was fully in compliance with Plan terms, as required under

20  ERISA.  Moreover, even under a *de novo* standard of review, this Court must

21  necessarily reach the same conclusion as the Committee did with regard to Mr.

22  ///

23  ///

24  ///

25

26

27

28

7512360_6.DOC

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S  CLAIM
FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN

1  Benhayon's claim.  Since no other conclusion is possible, Defendant's Motion

2  should be granted and judgment entered on Plaintiff's claim for benefits under the

3  WAP.

4

5  DATED:  July 22, 2009                    OGLETREE, DEAKINS, NASH, SMOAK

6                                           & STEWART, P.C.

7

8

9                                          By:____/s/_____
                                                    Christopher W. Decker
10                                          Attorneys for Defendants
                                            ROYAL BANK OF CANADA, RBC
11                                          CAPITAL MARKETS CORPORATION
                                            (incorrectly named and sued as "RBC
12                                          WEALTH MANAGEMENT COMPANY,
                                            formerly RBC DAIN RAUSCHER,
13                                          INC."), and THE ROYAL BANK OF
                                            CANADA US WEALTH
14                                          ACCUMULATION PLAN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. CV08-06090 FMC(AGRx)

7512360_6.DOC

MEMO. OF PTS. & AUTHS. ISO DEFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT RE PL.'S  CLAIM
FOR BENEFITS UNDER THE RBC US WEALTH ACCUMULATION PLAN