# KARI M. MYRON
### Attorney

22972 Mill Creek Drive
Laguna Hills, California 92653

949-716-0600
949-716-0606 Facsimile

February 6, 2008

Todd W. Schnell
Sr. Associate General Counsel
RBC Dain Rauscher
Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402

Gabriela Sikich
US Retirement Benefits Manager
RBC Dain Rauscher
Mailstop P16
60 South Sixth Street
Minneapolis, MN 55402

    Re:                  Steven Benhayon
    Date of Termination:   September 17, 2007

## REQUEST FOR RECONSIDERATION OF DENIAL OF ACCELERATED VESTING AND DISTRIBUTION

Dear Mr. Schnell and Ms. Sikich:

Demand is hereby made for Review of the December 11, 2007 Denial of Mr. Benhayon's request for distribution of RBC contributions to his WAP Account. First and foremost, we are unable to ascertain the applicability of the 2006 Plan in this instance. Please provide our office with a complete and fully executed copy(ies) of the purported restated plan incorporating and applying the provisions of the 2003 Plan Year "Summary Description and Prospectus" to Mr. Benhayon's request. In the absence of such documentation, it is our position that the vesting and distribution set forth in the 2003 Plan in fact controls.

Mr. Todd W. Schnell
Ms. Gabriella Sikich
In re Steven Benhayon
February 6, 2008
Page 2

### Eligibility to Participate

Participation in the RBC Wealth Accumulation Plan is limited only to that elite group of management or highly compensation employees whose gross cash compensation exceeds $150,000 per year. Participants are entitled to a matching contribution by RBC which is performance based.

It is undisputed that as of September 17, 2007, Mr. Benhayon was the Managing Director of Institutional Sales/Fixed Incomes Sales U.S., for RBC Capital Markets in San Francisco, thus qualifying as a member of that elite group of participants. His participation in the Wealth Accumulation Plan is consistent with this, as participation therein is designed for employees in a 'select group of management or highly compensated employees'. A review of the RBC Payroll records and the WAP records clearly support this as RBC's contribution to the WAP account is directly related to that very same level of heightened productivity.

Mr. Benhayon was terminated by RBC on September 17, 2007, less than 120 days prior to his 2008 distribution under the WAP, such distribution exceeding $300,000.

### Absent "Forfeiture", Mr. Benhayon is Entitled to Distribution upon Separation from RBC

At the forefront is Mr. Benhayon's entitlement RBC's 2003 contribution to his WAP account.

The Summary Description and Prospectus (dated April 1, 2003, and applicable to the immediate 2008 vesting of RBC's 2003 contribution) establishes that upon Separation[1] from RBC, an employee is entitled to accelerated vesting and distribution.

> *Distributions.* Upon electing to participate in the Plan, a participant will also make an irrevocable election with respect to the timing of the payment of the amounts credited to such participant's accounts. A participant may elect to have such distribution made either (i) upon the earlier of a specified date (which date must fall on the last

---

[1] Defined as "the date of a Plan participant's separation of employment from the Company. [2003 Plan Year "Summary Description and Prospectus", p. 4]

LAW OFFICE OF KARI M MYRON

EXHIBIT  E , PAGE  14
RBC/BENHAYON000000067

Mr. Todd W. Schnell
Ms. Gabriella Sikich
In re Steven Benhayon
February 6, 2008
Page 3

> day of a calendar quarter; provided that, any distribution shall be made prior to the last day of a calendar quarter if such distribution would result in payments to a participant in more than one calendar year) or the date of his ... **Separation if prior to such specified date, or (ii) upon such Separation.**
>
> [2003 Plan Year "Summary Description and Prospectus", p. 7; Emphasis added.]

Furthermore, if the employee is no longer with RBC at the date of the scheduled distribution, such distribution shall be in two annual installments "if the election is triggered by the participant's Separation prior to the date certain" and specifically:

> ... on or about January 15 of the two Plan years following the date of Separation if the election is triggered by the participant's Separation. Upon Separation, the first installment shall be equal to 50% of all amounts deemed allocated to a participant's accounts on the first payment date, and the second installment shall be equal to the remainder of all amounts deemed allocated to such participant's accounts on the second payment date ...
>
> [2003 Plan Year "Summary Description and Prospectus", p. 7]

Accordingly, on September 17, 2007, Mr. Benhayon's date of separation from RBC, he was entitled to accelerated vesting and distribution provided that he had not forfeited such entitlement. The Plan sets forth the criteria for such a denial of accelerated vesting and distribution:

> *Forfeiture of Matching Contributions and Other Amounts.* If a participant ceases to be employed by RBC ... due to his ... gross or willful misconduct during the course of his ... employment, including theft or commission of a gross misdemeanor or felony, all deemed investments credited to any Matching Stock Account or Matching Cash Account, any Special Deferred Compensation amount, and all Mandatory Deferred Compensation allocated to a participant's Mandatory Stock Account, will be forfeited, regardless of whether the vesting schedule has otherwise been satisfied with

LAW OFFICE OF KARI M MYRON

Mr. Todd W. Schnell
Ms. Gabriella Sikich
In re: Steven Benhayon
February 6, 2008
Page 4

> respect to such shares, or assets and the proceeds thereof will be deemed returned to the Company. Also, all amounts credited to a participant's Matching Stock Account or Matching Cash Account, any Special Deferred Compensation amount, and all Mandatory Deferred Compensation allocated to a participant's Mandatory Stock Account, that are not vested at the participant's employment termination date will be forfeited, except as otherwise described under "Vesting" above.
>
> [2003 Plan Year "Summary Description and Prospectus", p. 7]

It is undisputed that Mr. Benhayon was neither terminated for gross misconduct nor willful misconduct, and in fact his termination was part of an "arbitrary" termination by RBC, which has been referred to by your organization as anything from "position elimination" to "reduction in force" to "reorganization in the face of challenging credit markets". In any event, there being no recognized exception to accelerated vesting upon his separation from RBC employment, Mr. Benhayon is entitled to his distribution.

By RBC's own acknowledgment, this Plan may be subject to the provisions of Section 401 of the Employment Retirement Income Securities Act of 1974 (hereinafter ERISA)[2]. Assuming arguendo, that this is in fact a compensation plan, it cannot be subjected to the arbitrary determinations by the Committee within your company. Numerous courts have held that an employer has "established or maintained" an ERISA plan if it actively participated in the design and operation of the plan, directly controlled the day-to-day operation of the plan, exercised substantial discretion over the plan, and/or established a separate administrative scheme to manage the plan. [See, e.g. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991); *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1134 (1st Cir. 1995); *Elco Mechanical Contractors. Inc. v. Builders Supply Assoc.*, 832 F. Supp. 1054, 1057-58 (S.D. W. Va. 1993); *Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208, 1210 (5th Cir. 1980); *Sindelar v. Canada Transp., Inc.*, 520 N.W.2d 203, 207 (Neb. 1994).] It is well settled upon review of the 2003 Plan Year "Summary Description and Prospectus" that RBC

---

[2] See, e.g. 2003 Plan Year "Summary Description and Prospectus" at p. 10 ¶4; Section 5.10 of the 2006 Amended and Restated US Wealth Accumulation Plan and Prospectus.

Mr. Todd W. Schnell
Ms. Gabriella Sikich
In re Steven Benhayon
February 6, 2008
Page 5

maintains absolute control over the implementation of the Plan, the day-to-day operations of the Plan, exercises substantial discretion over the Plan, including but not limited to the discretion to determine who may participate and who may be entitled to receive the benefits of such participation therein.[3]

In summary, Mr. Benhayon's demand for accelerated vesting and distribution is reasserted. Please contact the undersigned upon conclusion of your Committee's re-evaluation of this request.

Very truly yours,
LAW OFFICE OF KARI M. MYRON

ORIGINAL SIGNED BY KARI M. MYRON

Kari M. Myron

KMM:ms

cc:     Client

---

[3] Although Mr. Benhayon disputes that the 2006 Prospectus is applicable in this particular instance, it is noted that RBC takes the same position with respect ERISA and its applicability therein. Notwithstanding the foregoing, because RBC has taken the position that Mr. Benhayon has forfeited his right to receive the RBC contribution to his WAP account, RBC has created a rebuttable presumption that in fact, ERISA does apply.