**BOHM, MATSEN, KEGEL & AGUILERA, LLP**
Kari M. Myron (Bar No. 158592)
Matthew J. Salcedo (Bar No. 237866)
695 Town Center Drive, Ste. 700
Costa Mesa, California 92626
Telephone:  (714) 384-6500
Facsimile:  (714) 384-6501
kmyron@bmkalaw.com

Attorneys for Plaintiff STEVEN BENHAYON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>STEVEN BENHAYON, an Individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>ROYAL BANK OF CANADA, a Canadian company, business form unknown; RBC WEALTH MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER, INC., business form unknown; THE ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN, formerly known as RBC Dain Rauscher Wealth Accumulation Plan; and, DOES 1 through 20,<br><br>                    Defendants. | Case No.: CV08-06090 FMC (AGRx)<br>Assigned to Hon. Florence-Marie Cooper [Courtroom 750 (Roybal)]<br><br><br>**PLAINTIFF'S <u>AMENDED</u> SUPPLEMENT TO THE ADMINISTRATIVE RECORD**<br><br>**[Filed concurrently with Simultaneous Briefing in re *ERISA*]** |

**TO THE HON. FLORENCE-MARIE COOPER, THE CLERK OF COURT, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Plaintiff STEVEN BENHAYON hereby submits his Amended Supplement to the Administrative Record as follows.

1

**PLAINTIFF'S <u>AMENDED</u> SUPPLEMENT TO THE ADMINISTRATIVE RECORD**

1   As is set forth in *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.* 293

2   F.3d 1139, 1143 (9th Cir. 2002):

> As a preliminary matter, we conclude the SPD is a plan document and should be considered when interpreting an ERISA plan. The ERISA statute requires the plan fiduciaries to act solely "in accordance with the documents and instruments governing the plan ...." 29 U.S.C. § 1104(a)(1)(D) (emphasis added). Employers are required to provide participants with a copy of an SPD (not the plan master document) that describes the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" and shall "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)-(b). Furthermore, the SPD is the "statutorily established means of informing participants of the terms of the plan and its benefits" and the employee's primary source of information regarding employment benefits. *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1329 (9th Cir.1996), citing, *Alday v. Container Corp. of America*, 906 F.2d 660, 665 (11th Cir.1990). For these reasons, we follow the other courts that have held that the SPD is part of the ERISA plan. *Chiles v. Ceridian*, 95 F.3d 1505, 1511 (10th Cir.1996) (holding that "SPDs are considered part of the ERISA plan documents" and when "interpreting the terms of an ERISA plan we examine the plan documents as a whole"); *Alday v. Container Corp. of America*, 906 F.2d 660, 665-666 (11th Cir.1990)

20   Accordingly, Plaintiff STEVEN BENHAYON hereby submits the following

21   documents that were erroneously omitted from the Administrative Record filed by the RBC

22   Defendants:

23   • Amended and Restated Royal Bank of Canada US Wealth

24   Accumulation Plan and Prospectus (dated November 1, 2006)

25   [RBC/BENHAYON 00030-00047]

26   • Wealth Accumulation Plan -- 2003 Plan Year – Summary of Plan

27   Provisions for FICM Sales Employees [RBC/BENHAYON 00048-

28   00051]

**PLAINTIFF'S <u>AMENDED</u> SUPPLEMENT TO THE ADMINISTRATIVE RECORD**

1      •      RBC US Wealth Accumulation Plan – 2004 Plan Year – Summary of

2          Plan Provisions for FICM Commissioned Employees

3          [RBC/BENHAYON 00052-00055]

4      •      RBC US Wealth Accumulation Plan – 2005 Plan Year – Summary of

5          Plan Provisions for FIG Commissioned Employees

6          [RBC/BENHAYON 000556-00059]

7      •      RBC US Wealth Accumulation Plan – 2006 Plan Year – Summary of

8          Plan Provisions for US Debt Markets Commissioned Employees

9          [RBC/BENHAYON 00060-00063]

10      •      RBC USA Wealth Accumulation Plan Committee Minutes

11          [RBC/BENHAYON 000301-00038]

12

13      In addition to the foregoing, by way of amendment, Plaintiff STEVEN BENHAYON

14 further submits the following document that was erroneously omitted from the

15 Administrative Record filed by the RBC Defendants:

16      •      Wealth Accumulation Plan – 2003 Plan Year – Summary Description

17          and Prospectus

18          [SAA 00056-00072]

19

20 DATED: July 31, 2009             BOHM, MATSEN, KEGEL, & AGUILERA, LLP

21

22

23                   By: _____

24                        Kari M. Myron

25                        Matthew J. Salcedo,

                               Attorneys for Plaintiff

26

27

28

3

**PLAINTIFF'S <u>AMENDED</u> SUPPLEMENT TO THE ADMINISTRATIVE RECORD**

# Wealth Accumulation Plan

## 2003 Plan Year

SUMMARY DESCRIPTION AND PROSPECTUS

## Royal Bank of Canada

This document constitutes part of
a prospectus covering securities
that have been registered under
The Securities Act of 1933



The date of this document is April 1, 2003

The description of the RBC Dain Rauscher Wealth Accumulation Plan (the "Plan") that follows is qualified in its entirety by the full text of the Plan, a copy of which is available upon request. Eligible persons are urged to review the terms of the Plan and to make any inquiries they feel necessary of the representatives of RBC Dain Rauscher Corporation (the "Company") named below prior to making their investment decisions. To obtain a copy of the Plan and additional information about the Plan and its administrators, the Committee (as defined below), you may contact Brent C. Sabin, Vice President, Benefits Manager, RBC Dain Rauscher, RBC Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, Minnesota 55402-4422; telephone (612) 371-7612.

A.   General Nature and Purpose of the Plan

The Plan is a nontax-qualified, deferred compensation plan pursuant to which a select group of management or highly compensated employees of the Company and its participating subsidiaries (as defined below) will be offered the opportunity to elect, on an annual basis, to defer receipt of a portion of compensation to be earned with respect to the upcoming year. The Plan is designed to provide an opportunity for such employees to achieve wealth accumulation through employee deferrals, tax-deferred savings and investment options that support long-term savings and allow such employees to share in the Company's growth and profitability. Pursuant to an agreement between the Company and its sole shareholder, Royal Bank of Canada, a Canadian Chartered Bank with its principal place of business in Toronto, Ontario, Canada ("RBC"), RBC has agreed to be the obligor (a "Plan Obligor") for certain obligations under the Plan as described under "Plan Obligor; Status as Unsecured General Creditors" below.

B.   Material Terms of the Plan

*Eligibility.* Employees eligible to participate in the Plan are any of the select group of management or highly compensated employees of the Company or its participating subsidiaries (defined under the Plan as a corporation, now or in the future, affiliated with the Company that adopts the Plan (with the Company's prior consent)) whose gross cash compensation (defined as "Recognized Compensation" for purposes of the Plan) exceeds $150,000 per year, or whose compensation or production otherwise exceeds a level deemed appropriate by the Board of Directors of the Company (the "Board of Directors") or any committee established by the Board of Directors to administer the Plan (the "Committee") to include only such select group of management or highly compensated employees, in each case, as determined by the Committee in its sole discretion. The members of the Committee serve at the pleasure of the Board of Directors. Employees are first eligible for Plan participation on the first day of the month following the initial date of employment with the Company, or as otherwise determined by the Committee. Employees who are resident in Canada for purposes of Canadian income tax legislation are not eligible to participate in the Plan.

*Election to Defer Compensation.* Participants may enroll in the Plan by electing to defer a percentage of their gross cash compensation in excess of $100,000 to be earned with respect to the Plan year ("Deferrable Compensation"). For some participants, as designated by the Committee, Deferrable Compensation will be defined as all gross cash compensation earned by

- 2 -

that participant with respect to the Plan year. Gross cash compensation is generally defined under the plan to include base salary, bonuses, and cash commissions earned by a participant with respect to the Plan year. Elections must be made no later than December 31 of the year immediately preceding the year in which such Deferrable Compensation will be earned or, with respect to employees who are first eligible to participate in the Plan during a given year, such employees must make an election within 30 days of initial employment, with such election to be effective with respect to Deferrable Compensation as of the first day of the month following the date of such election. In connection with designating an employee as being eligible to participate in the Plan, the Committee may designate a percentage of such employee's Deferrable Compensation that must be deferred (the "Mandatory Deferred Compensation"). The Committee may also designate all or a portion of such other compensation that must be deferred by participants (the "Special Deferred Compensation"). A participant may also elect voluntarily to defer a percentage of his or her Deferrable Compensation that the participant would otherwise earn with respect to services to be rendered in the next succeeding year (the "Voluntary Deferred Compensation"). A participant's total deferral opportunity with respect to any Plan year shall be the sum of his or her Mandatory Deferred Compensation, Special Deferred Compensation, and Voluntary Deferred Compensation (the "Deferred Amounts").

The Committee shall from time to time establish the maximum percentage of Deferrable Compensation that a participant may elect under the Plan. For the 2003 Plan year, the Committee has established 30% as the maximum percentage for participants who are not covered by any requirements for Mandatory Deferred Compensation. The maximum percentage for all other participants will vary as designated by the Committee.

Upon electing to participate in the Plan, a participant shall choose the form of the deemed investment of his or her Deferred Amounts by electing to credit such deferrals for any Plan year to one or more of the following:

(1)    his or her "Stock Account" (the bookkeeping account in which a participant's deemed investments in the common shares of RBC (the "Common Shares"), are credited);

(2)    his or her "Interest Account" (the bookkeeping account in which a participant's deemed investments are credited to earn a rate of return (the "Interest Rate"), as determined by the Committee); unless otherwise determined by the Committee, as of March 31, 2003 the Interest Rate shall be the 90-day LIBOR rate (reset quarterly) plus 0.5%;

(3)    his or her "Mutual Fund Account(s)" (the bookkeeping account(s) in which a participant's deemed investments in mutual funds, selected by the Committee from time to time, are credited);

(4)    such other accounts as the Committee may from time to time establish; or

(5)    a combination of the accounts described above.

Any election by a participant to have his or her Deferred Amounts credited to his or her Stock Account shall be irrevocable for all time thereafter.  Any investment election by a participant regarding his or her Deferred Amounts may be changed with respect to future deferrals in accordance with the rules established by the Committee.  If a participant fails to make an investment election, such participant's Deferred Amounts will be credited to his or her Interest Account.

Upon electing to participate in the Plan, a participant will also make an irrevocable election with respect to the timing of the distribution of amounts credited to such participant's accounts.  As described more fully in "Distributions" below, a participant may elect to have such distribution made either (i) upon the earlier of a specified date (which date must fall on the last day of a calendar quarter) or the date of his or her "Separation" (as defined below) if prior to such specified date, or (ii) upon such Separation.  If a participant fails to make a distribution election, his or her accounts will be distributed in two roughly equal annual installments in each of the two Plan years immediately following his or her Separation.  As used in the Plan, "Separation" means the date of a Plan participant's separation of employment from the Company, a participating subsidiary or an RBC subsidiary (other than due to death, disability or termination for cause), including "Approved Retirement" (as defined below under "Vesting").

*Deferred Compensation Accounts.*  Accounts for Plan participants will be established for bookkeeping purposes only and will not be considered as, or as evidence of the creation of, a trust fund or a transfer or other segregation of assets for the benefit of the Plan participants or their beneficiaries.  The accounts will be composed of a Stock Account, a Matching Stock Account, a Mandatory Stock Account, an Interest Account, one or more Mutual Fund Accounts, a Cash Account and a Matching Cash Account, and such other accounts as the Committee may from time to time authorize.  Such accounts shall be established and credited with the appropriate amounts as provided in the Plan. Crediting and pricing of participants' accounts shall occur on or about each payroll date.

*Stock Account.*  For any Plan year, in connection with  a participant's election to have a portion of his or her Deferred Amounts credited to his or her Stock Account, such participant's Stock Account shall be deemed to have been allocated the number of Common Shares, resulting from dividing such portion of the Deferred Amounts allocated to the Stock Account by the reported closing price per Common Share on the New York Stock Exchange as reported on or about each payroll date (the "Payroll Date Price").

*Interest Account.*  If a participant elects to have a portion of his or her Deferred Amounts for any Plan year credited to his or her Interest Account, then such account shall be increased by the amount of deferred compensation so credited on or about each payroll date.

*Mutual Fund Account.*  If a participant elects to have a portion of his or her Deferred Amounts for any Plan year credited to a Mutual Fund Account, then on or about each payroll date his or her appropriate Mutual Fund Account shall be deemed to have been allocated the number of units (including fractional units) of a "Mutual Fund" (as defined below) equal to the portion of his or her Deferred Amounts allocated to the Mutual Fund Account divided by the appropriate closing price, as determined by the Committee, on or about each payroll date.

- 4 -

"Mutual Fund" is defined under the Plan as the mutual fund investment vehicles selected from time to time by the Committee in its sole and absolute discretion.

*Matching Stock Account*. The Committee shall establish prior to the beginning of each Plan year the extent to which Deferred Amounts are eligible for Matching Contributions by the Company. Matching Contributions, in general, will vary with certain performance-based measures of the Company, or such other performance factors as determined by the Committee. If a participant becomes entitled to a Matching Contribution, then, after the end of the Plan year and at such time as the Committee shall determine, his or her Matching Stock Account will be deemed to have been allocated the number of Common Shares, resulting from dividing the amount of the Employer Match by the Payroll Date Price. Matching Contributions will credited to participants' Stock Accounts and shall be irrevocable for all time thereafter (subject to the vesting requirements and forfeiture provisions discussed below).

*Crediting of Investment Earnings*. At such times as RBC declares dividends on its Common Shares, a determination will be made as to the number of Common Shares which are credited to a participant's Stock Account, Matching Stock Account and Mandatory Stock Account, the record date for such dividend, and an amount equal to such number of Common Shares multiplied by the declared dividend per Common Share in U.S. dollars (such dividend to be calculated without taking into account any and all Canadian withholding taxes to which such dividend might be subject, if actually paid) will be credited, on the payment date, initially to such participant's Cash Account and Matching Cash Account (if dividends are paid in cash) or such participant's Stock Account, Matching Stock Account and Mandatory Stock Account (if dividends are declared in Common Shares). Thereafter, all funds credited to a participant's Cash Account and Matching Cash Account as a result of cash dividends, shall be deemed to have been used to purchase Common Shares on dates determined by the Committee. The number of additional Common Shares purchased shall be equal to the number of Common Shares, derived by dividing the total amount of cash credited to the Participant's Cash Account and Matching Cash Account by the Payroll Date Price. The Company will not provide a Matching Contribution with respect to such deemed purchases of Common Shares credited to a participant's Stock Account, Matching Stock Account or Mandatory Stock Account.

As of the last business day of each month or such other date as the Committee may determine, an amount equal to a participant's balance in the Interest Account on the first business day of such month multiplied by the quarterly Interest Rate, as determined by the Committee, will be allocated to such participant's Interest Account. If a participant elects to transfer amounts out of his or her Interest Account, credits to such participant's Interest Account shall be prorated to reflect the number of days such transferred funds were held in such participant's Interest Account.

At such times as interest or dividends are paid or other distributions made in connection with a Mutual Fund ("Fund Additions"), a determination will be made as to the number of units (including fractional units) of the Mutual Fund which are credited to a participant's Mutual Fund Account on the interest or other distribution date, and an amount equal to such number of units multiplied by the amount of Fund Additions per unit will be credited, on the date such Fund Addition is paid or distributed, to such participant's Mutual Fund Account, or other fund determined by the Committee. Interest payments or other distributions will be deemed

reinvested in additional units of the Mutual Fund at prevailing market prices on the date of the interest payment or other distribution.

A participant's Cash Account shall not be credited with interest, and shall not be deemed to be invested in any interest-bearing item. Similarly, a participant's Matching Cash Account shall not be credited with interest, and shall not be deemed to be invested in any interest-bearing item.

*Intra-Plan Transfers.* A Plan participant may elect to have all or a portion of the amounts credited to any of his or her accounts transferred to any other accounts under the Plan (other than amounts credited to the Stock Account, Matching Stock Account and Mandatory Stock Account); provided, however, that no transfer of any account balance may be made into or out of a participant's Stock Account, Mandatory Stock Account or Matching Stock Account. The Committee shall determine the procedures and limits on intra-Plan transfers for each Plan year, and intra-plan transfers shall be effective as soon as practicable after a Participant's request is received by the Company. An intra-Plan transfer shall be initiated by submitting a request to the Company in such form as the Committee shall determine.

*Vesting.* All Voluntary Deferred Compensation amounts credited to the Stock Account, Interest Account, Mutual Fund Account and Cash Account (except for deemed investments credited to a participant's Matching Cash Account) of a Plan participant shall be fully vested. Subject to acceleration or modification by the Committee in its sole discretion, deemed investments credited to the Matching Stock Account and Matching Cash Account of a Plan participant, any Special Deferred Compensation amounts, and all Mandatory Deferred Compensation allocated to the Mandatory Stock Account or such other investment accounts as directed by the participant, shall become vested on the date or dates determined by the Committee. The Committee will announce any prospective change in the vesting schedule with respect to any Matching Contributions, Special Deferred Compensation or Mandatory Deferred Compensation prior to December 31 preceding each new Plan year.

All deemed investments credited to a participant's Matching Stock Account and Matching Cash Account, any Special Deferred Compensation amounts, and all Mandatory Deferred Compensation allocated to the Mandatory Stock Account or such other investment accounts as directed by the participant, will vest in full upon the death and disability (as defined in the Plan) of the participant. Similarly, subject to acceleration or modification by the Committee, deemed investments credited to a participant's Matching Stock Account and Matching Cash Account, any Special Deferred Compensation amounts, and all Mandatory Deferred Compensation allocated to a participant's Mandatory Stock Account or such other investment accounts as directed by the participant, that would not otherwise be fully vested in accordance with the schedule fixed by the Committee, will automatically vest in full upon the one-year anniversary of a participant's "Approved Retirement," which is defined under the Plan as the retirement or termination of employment of a participant who (i) has been an employee of the Company or any participating subsidiary for ten or more years at the time of separation or termination of employment, (ii) has entered into a non-competition, non-solicitation and related agreement in a form approved by the Committee and (iii) with respect to deferrals for all Plan years commencing on or after January 1, 2001, whose age upon Separation is at least fifty (50);

provided that, such vesting will be subject to forfeiture as set forth in the participant's non-competition agreement with the Company.

*Forfeiture of Matching Contributions and Other Amounts.* If a participant ceases to be employed by RBC, an RBC subsidiary or the Company due to his or her gross or willful misconduct during the course of his or her employment, including theft or commission of a gross misdemeanor or felony, all deemed investments credited to any Matching Stock Account or Matching Cash Account, any Special Deferred Compensation amount, and all Mandatory Deferred Compensation allocated to a participant's Mandatory Stock Account, will be forfeited, regardless of whether the vesting schedule has otherwise been satisfied with respect to such shares or assets, and the proceeds thereof will be deemed returned to the Company. Also, all amounts credited to a participant's Matching Stock Account or Matching Cash Account, any Special Deferred Compensation amount, and all Mandatory Deferred Compensation allocated to a participant's Mandatory Stock Account, that are not vested at the participant's employment termination date will be forfeited, except as otherwise described under "Vesting" above.

*Distributions.* Upon electing to participate in the Plan, a participant will also make an irrevocable election with respect to the timing of the payment of the amounts credited to such participant's accounts. A participant may elect to have such distribution made either (i) upon the earlier of a specified date (which date must fall on the last day of a calendar quarter; provided that, any distribution shall be made prior to the last day of a calendar quarter if such distribution would result in payments to a participant in more than one calendar year) or the date of his or her Separation if prior to such specified date, or (ii) upon such Separation.

Distributions that are made prior to the date on which Matching Contributions, Mandatory Deferred Compensation or Special Deferred Compensation are vested will, in general, result in the forfeiture of such contributions.

Distributions made pursuant to an in-service election are made in a single payment if the election is triggered by the date selected by the participant, or in two annual installments if the election is triggered by the participant's Separation prior to the date certain selected by the participant. Such distributions will be made on or about the date selected by the participant if the election is triggered by such date, or on or about January 15 of the two Plan years following the date of Separation if the election is triggered by the participant's Separation. Upon Separation, the first installment shall be equal to 50% of all amounts deemed allocated to a participant's accounts on the first payment date, and the second installment shall be equal to the remainder of all amounts deemed allocated to such participant's accounts on the second payment date (in each case, less any amounts required to be withheld as described under "Tax Withholding" below).

Distributions pursuant to an election to receive distributions upon Separation or Approved Retirement will be made to participants in two annual installments on or about January 15 of each of the two Plan years following the year of Separation in the manner described in the preceding paragraph; provided, however, that a participant shall be entitled to change, on a one-time basis only, his or her participant's Separation election with respect to an Approved Retirement to extend the number of post-Approved Retirement installment payments described above from two annual installments to three, four or five annual installments; and provided further, that such change in his or her Approved Retirement election must be made at

- 7 -

least twelve (12) months prior to the effective date of such participant's Approved Retirement. A participant's failure to make a distribution election will result in a default election to receive a distribution in two annual installments on or about January 15 of each of the two Plan years following the year of Separation in the manner described in the preceding paragraph.

Distributions following death or disability (as defined in the Plan) shall be made in a single payment as soon as administratively feasible after such event.

All distributions from the Stock Account, Matching Stock Account and Mandatory Stock Account will be in the form of Common Shares, less the number of Common Shares equal to the amount of tax required to be withheld. All distributions from other accounts will be in cash. All Common Shares distributed under the Plan, if any, shall be, at RBC's option, Common Shares that have been previously issued and that are currently trading in the market, or, subject to the approval of the board of directors of RBC and to regulatory approval, authorized but previously unissued shares. RBC has filed a Registration Statement on Form S-8 with the Securities and Exchange Commission covering the deferred compensation obligations under the Plan and the Common Shares that may be distributed under the Plan. Distribution from accounts of a Plan participant upon such participant's death shall be made to the participant's designated beneficiary.

*Charges and Deductions to Accounts.* As of April 1, 2003, Fidelity Investments became administrator under the Plan. Fidelity Investments charges the Company an annual record-keeping fee which is apportioned ratably against participants' accounts. Additionally, to offset additional costs incurred by offering mutual fund investments in the plan, a special quarterly fee will continue to be deducted from the participant's Mutual Fund Account. The amount of the special quarterly fee will be determined by multiplying the value of the participant's Mutual Fund Account, by a decimal, which is currently 0.000625. From time to time, the Committee will review, and may change, the record-keeping fee and the quarterly mutual fund fee calculation.

*Plan Obligor; Status as Unsecured General Creditors.* RBC shall be the Plan Obligor for amounts payable to participants pursuant to distributions from all accounts; provided, however, that, except as described in the following sentence, the Company shall be the Plan Obligor with respect to the Mandatory Stock Accounts and their related Matching Contributions. Notwithstanding the foregoing, RBC shall be the Plan Obligor with respect to all accounts of participants who are residents, for tax purposes, in California and Arizona during the Plan year. All participants are general, unsecured creditors of the relevant Plan Obligor with respect to amounts payable from the accounts described herein.

The participants and beneficiaries shall not have any secured or preferred interest by way of trust, escrow, lien or otherwise in any specific assets of RBC, the Company, or any participating subsidiary. If a Plan Obligor, in fact, elects to set aside monies or other assets to meet its obligations under the Plan (there being no obligation to do so) through the creation of a trust or otherwise, such monies or other assets shall be subject to the claims of its general creditors, and neither any participant nor any beneficiary of any participant shall have a legal, beneficial or security interest therein.

- 8 -

*Certain Federal Income Tax Consequences.*   Due to the complexity of the applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code"), this summary of certain federal income tax consequences only sets forth the general tax principles affecting the Plan.   These general tax principles are subject to changes which may be brought about by subsequent legislation or by regulations and administrative rulings, which may be applied on a retroactive basis.   Participants may be subject to state or local income taxes as a result of their election to defer compensation pursuant to the Plan and should refer to the applicable laws in those jurisdictions.

Neither RBC, the Company nor any participating subsidiary has obtained a ruling from the Internal Revenue Service (the "IRS") regarding the federal income tax consequences associated with participation in the Plan.  **Accordingly, each Plan participant should consult his or her own tax counsel on questions regarding tax liabilities arising upon any election to defer compensation pursuant to the Plan and any distributions made to such participant pursuant to the Plan.**

Plan participants remain general, unsecured creditors of the Plan Obligors with respect to the right to receive any distributions pursuant to the Plan.  In addition, the Plan provides that the election to defer any portion of a participant's compensation is made prior to the performance of the personal services for the Company or any participating subsidiary to which the compensation relates.  Accordingly, the Company believes that Plan participants are not expected to recognize either the deferred amounts or the matching contributions as income compensation for federal income tax purposes until such amounts are actually paid or distributed to them under the Plan; provided that, such amounts may still be subject to FICA taxes at the time they would have been paid but for the participant's deferred election.  The participants employer will be allowed an income tax deduction in the amount that, and for its taxable year in which, a Plan participant recognizes compensation income to the extent such amount satisfies the general rules concerning deductibility of compensation.  As described above and in "Tax Withholding" below, it is expected that the Company will be required to withhold or otherwise collect income and other payroll taxes upon such amounts as required under Section 3402 and certain other sections of the Code.

*Tax Withholding.*   All distributions will be treated as wages for tax purposes and therefore will be made net of all applicable income, FICA and payroll taxes required to be withheld.  In connection with any event that gives rise to a federal or other governmental tax withholding obligation on the part of the Company or any of its subsidiaries or affiliates relating to amounts under the Plan (including, without limitation, FICA tax), (i) the Company may deduct or withhold (or cause to be deducted or withheld) from any payment or distribution to a participant, whether or not pursuant to the Plan, or (ii) the Committee shall be entitled to require that the participant remit cash to the Company or any of its subsidiaries or affiliates (through payroll deductions or otherwise), in each case in an amount sufficient in the opinion of the committee to satisfy such withholding obligations.

*No Compensation Under the RBC-U.S.A. Retirement and Savings Plan.*   The Matching Contributions and any other amounts contributed by the Company under this Plan will not constitute "Recognized Compensation" for purposes of calculating retirement benefits under the RBC-U.S.A. Retirement and Savings Plan, the Company's tax-qualified, retirement benefit plan.

*Voting Rights.*  Accounts under the Plan are bookkeeping accounts and, accordingly, Plan participants will no t have any voting rights with respect to any Common Shares or any units or other interests in Mutual Funds deemed allocated to any Account.

*Plan Administration.*  The Plan will be administered by the Committee. The Committee has the full power and authority to make all determinations provided for in the Plan, including without limitation promulgating rules to address potential conflicts of interest; provided that, the Board of Directors has the full power and authority to make determinations with respect to the Plan having the effect of materially increasing the cost of the Plan to the Company or any participating subsidiary. The Plan may be amended or terminated at any time by the Committee or the Board of Directors, including, without limitation, (i) to ensure that neither the Plan Obligors nor the participants are subject to adverse Canadian or United States tax consequences and (ii) to modify the form of distribution of participants' accounts. Plan participants will be responsible for all administrative charges incurred with respect to the Plan to the extent such expenses are not paid by the Company, including the costs of outsourced recordkeeping (which expenses will be allocated equally among the participants' accounts). If any Plan participant or beneficiary of a Plan participant disagrees with any determination that has been made for payment under the Plan, a claim may be presented in accordance with procedures set forth in the Plan.

*Amendments to and Termination of Plan.*  The Plan may be amended or terminated at any time by the Committee or the Board of Directors, but no such amendment or termination shall have the effect of (i) reducing the vested portion of amounts already credited to the Stock Account, Cash Account, Interest Account, Mutual Fund Account, Matching Stock Account, Matching Cash Account or Mandatory Stock Account or (ii) extending the time of distribution of such participant's accounts, without the consent of such participant. The Plan will continue in effect until so terminated. Upon termination all amounts credited to Participants' accounts and not forfeited may be distributed.

*ERISA Matters.*  Although the Plan is not qualified under Section 401 of the Code, the Plan may be an "employee pension benefit plan" as defined by the Employment Retirement Income Security Act of 1974, as amended ("ERISA"). However, if the Plan is determined to be an "employee pension benefit plan," the Company believes that it constitutes an unfunded plan of deferred compensation maintained for a select group of management or highly compensated employees and, therefore, it is exempted from many ERISA requirements. A statement has been filed with the Department of Labor to comply with ERISA reporting and disclosure requirements.

*Funding.*  The Plan does not require that any deemed investments under this Plan be funded by the Company.

*Reporting.*  As soon as administratively feasible after each calendar quarter end, the Company will prepare and deliver to each participant a report showing (i) the amounts credited to the participant's accounts since the last report from the Company, and (ii) the amounts of any distributions made since the last report. At its discretion, the Company may prepare and deliver more frequent reports to Plan participants.

- 10 -

C.    Information Concerning Investment Alternatives

As described above, Plan participants will be entitled to determine on an annual basis how their Deferred Amounts under the Plan will be credited into accounts deemed invested in RBC's Common Shares Interest, or Mutual Funds.

*RBC Stock Information.*  The annual return on RBC's Common Shares for each of the years in the five-year period ended January 31, 2003, is set forth below:

| 12-Month Period Ended January 31 | Annual Return on RBC Common Shares (1) |
|---|---|
| 2003 | 20.1% |
| 2002 | 1.5% |
| 2001 | 60.8% |
| 2000 | -16.7% |
| 1999 | 1.6% |

(1)    Assumes quarterly reinvestment of all dividends.  Based on New York Stock Exchange closing prices on January 31st

Annualized returns on RBC's Common Shares as compared with annualized returns on the Toronto Stock Exchange 300 Index and the Standard & Poor's 500 Index for the five-year period ended January 31, 2003, are set forth below:

|  | Annualized Return on RBC Common Shares(1) | Annualized Return on TSE 300 Index (2) | Annualized Return on S&P 500 Index (3) |
|---|---|---|---|
| 1 Year | 20.11% | -10.6% | -23.0% |
| 5 Year | 10.01% | -2.6% | -1.3% |

(1)    Return numbers are based on the performance of RBC Common Shares on the New York Stock Exchange plus dividend reinvestment.
(2)    Data provided by Bloomberg.  Assumes reinvestment of all dividends.
(3)    Data provided by Morningstar.  Assumes reinvestment of all dividends.

Eligible employees are urged to obtain copies of, and to review, the documents incorporated by reference herein (described under Item E below) which describe RBC's business and financial performance.  **The past performance of RBC's Common Shares is not a guarantee of future results.**  As with nearly any type of investment, a Plan participant's deemed investment in RBC's Common Shares could generate little or no return or result in a loss of capital.

*Interest Account Information.*

A Plan participant's deemed investments in the Interest Account are to earn a rate of return that approximates the Company's long term borrowing cost, as determined from time to time by the Committee.  For 2003, the Interest Rate for the Interest Account will be the London Interbank Offered Rate ("LIBOR") plus 0.5%.  The pro forma annual return on the RBC Dain

Rauscher Interest Account (assuming quarterly compounding of interest) for each of the years in the five-year period ended March 31, 2003, is set forth below:

| 12-Month Period Ended March 31 | Annual Return on Interest Account |
|---|---|
| 2003 | 2.3% |
| 2002 | 3.8% |
| 2001 | 7.2% |
| 2000 | 6.2% |
| 1999 | 6.0% |

Pro forma annualized returns on the Interest Account (assuming quarterly compounding of interest) for the five-year period ended March 31, 2003, are set forth below:

|  | Annualized Return on Interest Rate |
|---|---|
| 1 Year | 2.3% |
| 5 Year | 5.1% |
| 10 Year | 5.4% |

*Mutual Fund Information.*

Effective March 31, 2003, participants can elect to have a portion or all of his or her Deferred Amount deemed invested in any of eight mutual funds, which have been selected by the Committee. Additionally, the Committee intends to add additional mutual fund options from time to time. The Committee may eliminate or replace mutual funds from time to time. The mutual funds currently available and the current asset class/investment style they represent, are listed below:

| Fund Name | Asset Class/Investment Style |
|---|---|
| American Balanced Fund | Balanced Fund |
| U.S. Equity Index Commingled Pool | S&P 500 Index Fund |
| Van Kampen Comstock | Large Cap |
| Growth Fund of America | Large Cap |
| RBC (Centura) Mid Cap | Mid Cap |
| FMI Focus | Small Cap |
| Wasatch Core Growth | Small Cap |
| EuroPacific Growth Fund | International Equity |

The RBC Midcap fund is advised by Voyageur Asset Management, a subsidiary of RBC Dain Rauscher. None of the other seven mutual funds that are being made available to plan participants are affiliated with RBC or the Company or any of their affiliates.

- 12 -

00067

The following descriptions of the mutual funds is derived from and is qualified in its entirety by the full text of the prospectus for each fund, copies of which are available upon request from the Benefits Manager at the address and phone number listed in the first paragraph of this prospectus.  Although the Company is providing certain information with respect to each fund below, neither RBC nor the Company expresses any opinion as to the accuracy and completeness of such information, and RBC and the Company expressly disclaim any liability for any inaccuracies or misrepresentations with respect to each fund contained herein.  Plan participants are urged to review carefully the prospectuses for the mutual funds and to make any inquiries they feel necessary prior to making their decisions about deemed investments in these mutual funds.

00068

## Mutual Fund Information — Fund Descriptions

| Fund Name | Type of Fund | Goal | What it Invests In |
|---|---|---|---|
| American Balanced Fund | Growth and Income Balanced Fund | To provide current income and long-term growth of capital and income while preserving your investment | A broad variety of common and preferred stocks, corporate bonds, and government securities. The fund will have at least 25% of its assets invested in fixed income secutiries. |
| U.S. Equity Index Commingled Pool | Index Fund | Seeks to approximate the composition and total return of the Standard & Poor's 500 Index | Invests primarily in the common stocks of the 500 companies that make up the S&P 500. |
| Van Kampen Comstock Fund | Large Cap Mutual Fund | Seeks capital growth and income | Normally the fund invests in a portfolio of equity securities, including preferred stocks, common stocks, and securities convertible into preferred and common stock. The fund emphasizes a "value" style of investing, seeking well established, undervalued companies believed to possess the potential for capital growth and income. The fund may invest up to 15% of its assets in securities of foreign issuers, which may involve greater risk than owning securities of U.S. issuers. |
| Growth Fund of America | Large Cap Mutual Fund | Seeks to provide long-term capital appreciation | A diversified portfolio consisting primarily of common stocks. The Fund may also invest in convertible securities, nonconvertible preferred stocks, and stocks of issuers outside the United States. The Fund has the flexibility to invest wherever the best growth opportunities appear to be. |
| RBC MidCap Fund | Mid Cap Mutual Fund | Seeks to provide long-term capital growth | The fund normally invests at least 80% of its net assets in equity securities of mid-sized companies that fall within a range of companies in the Standard & Poor's Mid Cap 400 Composite Index at the time of purchase by the fund. Investments are primarily in common stocks. The advisor uses quantitative analysis to select stocks for the fund's portfolio that the advisor believes offer attractive growth opportunities and at reasonable prices. |

## *Mutual Fund Information — Fund Descriptions*

| Fund Name | Type of Fund | Goal | What it Invests In |
|---|---|---|---|
| FMI Focus Fund | Small Cap Mutual Fund | Seeks to provide long-term growth | The fund invests in small to mid-cap companies that have substantial capital growth potential. These companies frequently have little or no following by the major stock brokerage firms. The fund looks for stocks of businesses that are selling at what management believes are substantial discounts to prices that accurately reflect their future earnings prospects. The fund's management takes a "focused" approach to investing, meaning the fund may from time to time invest in a limited number of securities and/or industries, and its top ten holdings may constitute 50% or more of the fund's assets. Stocks of small companies may lack the financial resources, product diversification and competitive strengths of larger companies. |
| Wasatch Core Growth Fund | Small Cap Mutual Fund | Seeks to provide long-term capital growth | The fund invests primarily in the common stocks of growing companies. These companies are usually small to mid-sized with market capitalizations of less than $5 billion at the time of initial purchase. The fund's management uses a "bottoms up" fundamental analysis to look for companies that the fund's management believes are stable and have the potential to grow steadily for long periods of time. Stocks of small companies may lack the financial resources, product diversification and competitive strengths of larger companies. |
| EuroPacific Growth Fund | International Mutual Fund | To increase the value of your investment over the long term through capital growth | The fund invests primarily in stocks of companies that do most of their business outside the United States. Normally, at least 65% of the fund's assets will be invested in securities of companies from Europe or the Pacific Basin. The fund can invest in many types of companies, ranging from large multinational corporations located in major world markets, to smaller companies located in developing countries. Developing (or emerging market) countries may be subject to more frequent and greater price changes than securities of more developed countries. Foreign investments, especially in developing countries, involve greater risk and may offer greater potential returns than U.S. investments. These risks include political and economic uncertainties of foreign countries, as well as the risk of foreign currency fluctuations. There are additional risks associated with funds that concentrate their investments in one geographic area. |

00070

Historical Fund Performance. The annual return for each of the years in the five-year period ended December 31 and for the first quarter of 2003, is set forth below:

| Fund | 2003 YTD (1) (3/31/03) | 12-Month Period Ended December 31 | | | | |
|---|---|---|---|---|---|---|
| | | 2002 | 2001 | 2000 | 1999 | 1998 |
| American Balanced Fund | -2.4 | -6.3 | 8.2 | 15.9 | 3.5 | 11.1 |
| U.S. Equity Index Commingled Pool (2) | -3.2 | -22.16 | -11.9 | -8.9 | 20.7 | 28.8 |
| Van Kampen Comstock Fund | -4.5 | -19.6 | -1.8 | 31.9 | 2.4 | 20.1 |
| Growth Fund of America | -2.5 | -22.0 | -12.3 | 7.5 | 45.7 | 31.8 |
| RBC MidCap Fund | -3.8 | -17.7 | 0.8 | 15.1 | 10.7 | 21.2 |
| FMI Focus | -5.0 | -22.2 | 2.5 | 23.4 | 54.1 | 35.5 |
| Wasatch Core Growth Fund | -7.5 | -22.9 | 28.8 | 37.4 | 19.4 | 1.6 |
| EuroPacific Growth Fund | -9.7 | -13.6 | -12.2 | -17.8 | 57.0 | 15.5 |

(1) Morningstar data as of 3-31-03.
(2) Fidelity data as of 3-31-03.

Annualized returns on the mutual fund options, as compared to annualized returns on the Standard & Poor's 500 Index, the Russell 2000 Small Cap Index, and the MSCI World Index for the period ended March 31, 2003, are set forth below:

| Fund | 1 Year | 5 Year | 10 Year |
|---|---|---|---|
| American Balanced Fund | -11.61 | 4.33 | 9.42 |
| U.S. Equity Index Commingled Pool | -24.83 | -3.77 | 8.53 |
| Van Kampen Comstock Fund | -25.82 | 1.64 | 10.36 |
| Growth Fund of America | -22.99 | 4.26 | 11.44 |
| RBC MidCap Fund | -24.49 | 2.3 | N/A |
| FMI Focus | -30.33 | 11.26 | N/A |
| Wasatch Core Growth Fund | -35.27 | 6.74 | 13.98 |
| EuroPacific Growth Fund | -23.16 | -2.11 | 6.74 |
| Annualized Return on S&P 500 (1) | -24.8 | -3.8 | 8.5 |
| Annualized Return on Russell 2000 Index (2) | -26.97 | -4.12 | 6.22 |
| Annualized Return on MSCI World Index (1) | -25.3 | -6.85 | 3.37 |

(1)   Morningstar data as of 3-31-03.
(2)   Russell Indexes data as of 3-31-03.

**The past performances of all these mutual funds are not guarantees of future results. As with any mutual fund investment, a Plan participant's deemed investment in these funds could generate little or no return or result in a loss of principal.**

D.   Resale Restrictions

Participants who are "affiliates" under the Securities Act of 1933, as amended (the "1933 Act"), of RBC at the time they receive distributions under the Plan in the form of Common Shares will, in order to resell such shares, be required either to observe the resale limitations of

Rule 144 of the 1933 Act or offer their shares for resale pursuant to another applicable exemption from registration under the 1933 Act. An "affiliate" of a company is defined under Rule 144(a)(1) of the 1933 Act as any person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under control with, such company. The Company is under no obligation to file a reoffer prospectus on behalf of any Plan participant. Participants who are not affiliates at the time they receive distributions under the Plan in the form of Common Shares are expected to receive freely tradable shares.

E.   Documents Incorporated by Reference

The following documents, which have been filed by RBC with the Securities and Exchange Commission (the "Commission"), are incorporated by reference herein, as of their respective dates:

(a) RBC's Annual Report on Form 40-F for the fiscal year ended October 31, 2001, filed with the Commission on January 17, 2002 and December 27, 2002;

(b) RBC's Reports on Form 6-K dated November 29, 2001, January 17, 2002, June 1, 2002, June 30, 2002, August 23, 2002, January 1, 2003 and March 14, 2003,

(c) The description of capital stock contained in any Registration Statement or report filed under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), including any amendment or report filed for the purpose of updating such description.

All documents filed by RBC pursuant to Sections 13(a), 13(c), 14 and 15(d) of the Exchange Act, subsequent to the date hereof and prior to the filing of a post-effective amendment which indicates that all securities offered hereby have been sold or which deregisters all securities then remaining unsold, shall be deemed to be incorporated by reference herein and to be a part hereof from the respective dates of filing of such documents.

In addition to the Plan prospectus, RBC or the Company will provide without charge to each person to whom a copy of this document has been delivered, on the written or oral request of such person, a copy of any or all of the following:

(a) the documents referred to above, excluding exhibits thereto, which have been or may be incorporated by reference herein,

(b) RBC's annual report to shareholders for the last fiscal year, and

(c) any report, proxy statement or other communication distributed to RBC's shareholders.

Requests for such copies should be directed to Investor Relations Department, Royal Bank of Canada, by writing to 123 Front Street West, 6th Floor, Toronto, Ontario, Canada, M5J 2M2, or by calling (416) 955-7802, or by visiting royalbank.com/investorrelation.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Costa Mesa, County of Orange, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 695 Town Center Drive, Ste. 700, Costa Mesa, CA 92626.  On July 31, 2009 I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED:     **PLAINTIFF'S AMENDED SUPPLEMENT TO THE ADMINISTRATIVE RECORD**

SERVED UPON:                **SEE ATTACHED SERVICE LIST**

☐  (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Costa Mesa, California.  I am readily familiar with the practice of Bohm, Matsen, Kegel & Aguilera, LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by U.S. Delivery Systems to receive documents to be delivered on the same date.  A proof of service signed by the authorized courier will be filed forthwith.

☐  (BY FEDERAL EXPRESS) I am readily familiar with the practice of Bohm, Matsen, Kegel & Aguilera, LLP for the collection and processing of correspondence for overnight delivery and known that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☐  (BY FACSIMILE WHERE INDICATED)  The above-referenced document was transmitted by facsimile transmission and the transmission was reported as complete and without error.  Pursuant to C.R.C. 2009(I), I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is attached to this Declaration.

☒  (BY ELECTRONIC FILING WITH THE U.S. DISTRICT COURT)  By submitting said documents for Electronic Case Filing on said date pursuant to Local Rule 5-4 and General Order 45, at Bohm, Matsen, Kegel & Aguilera, LLP, 695 Town Center Drive, Ste. 700, Costa Mesa, CA 92626.

☐  (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on July 31, 2009, at Santa Ana, California.

Donald Shaw

**SERVICE LIST**
*__Benhayon vs. Royal Bank of Canada, et. al.__*
**United States District Court, Central District of California**
**Case No. CV08-06090-FMC (AGRx)**

| | |
|---|---|
| Linda Claxton, Esq.<br>OGLETREE DEAKINS NASH SMOAK & STEWART<br>633 West Fifth Street, 53rd Floor<br>Los Angeles, CA 90071<br>P: 213-239-9800<br>F: 213-239-9045<br>Linda.claxton@ogletreedeakins.com | Attorney for Royal Bank of Canada US Wealth Accumulation Plan |
| The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 | Agents for Service for Dain Rauscher Incorporated |