1  LINDA CLAXTON, State Bar No. 125729
   linda.claxton@ogletreedeakins.com
2  CHRISTOPHER W. DECKER, State Bar No. 229426
   christopher.decker@ogletreedeakins.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  633 West Fifth Street, 53rd Floor
   Los Angeles, California 90071
5  Telephone:   (213) 239-9800
   Facsimile:   (213) 239-9045
6
7  Attorneys for Defendants
   ROYAL BANK OF CANADA, RBC CAPITAL MARKETS
8  CORPORATION (incorrectly named and sued as "RBC WEALTH
   MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER,
9  INC."), and THE ROYAL BANK OF CANADA US WEALTH
   ACCUMULATION PLAN
10

11                    UNITED STATES DISTRICT COURT
12                   CENTRAL DISTRICT OF CALIFORNIA
13

14  STEVEN BENHAYON,                    Case No. CV08-06090 FMC(AGRx)

15              Plaintiff,              REPLY MEMORANDUM IN
                                        SUPPORT OF DEFENDANTS'
16       v.                            MOTION FOR PARTIAL
                                        SUMMARY JUDGMENT ON
17  ROYAL BANK OF CANADA, a            PLAINTIFF'S CLAIM FOR
    Canadian company, business form    BENEFITS UNDER THE  ROYAL
18  unknown; RBC WEALTH               BANK OF CANADA US WEALTH
    MANAGEMENT COMPANY, formerly      ACCUMULATION PLAN
19  RBC DAIN RAUSCHER, INC.,
    business form unknown; THE ROYAL   Date:      not  applicable
20  BANK OF CANADA US WEALTH          Time:      not  applicable
    ACCUMULATION PLAN, formerly        DJ:        Florence-Marie Cooper
21  known as RBC Dain Rauscher Wealth  Courtroom: (Roybal) 750
    Accumulation Plan; and, DOES 1     MJ:        Alicia G. Rosenberg
22  through 20,                         Courtroom: (Spring) 23

23              Defendants.            Trial Date:  February 16, 2010
24

25
26
27
28

1

## TABLE OF CONTENTS

2

**Page(s)**

3

I.      INTRODUCTION ...................................................................................... 1

4

II.     FACTUAL BACKGROUND ...................................................................... 2

5

III.    STANDARD FOR SUMMARY JUDGMENT. ........................................... 2

6

IV.     ARGUMENT ............................................................................................. 2

7

      **A.**    The WAP's Status as a Top Hat Plan is Irrelevant to Plaintiff's Claim for Benefits. ................................................................................ 2

8

      **B.**    The WAP Satisfies The Requirements Of A Top Hat Plan. ................ 3

9

            **1.**    The WAP Limits Participation to a Select Group. ..................... 3

10

            **2.**    The WAP Limits Participation to Management And/Or Highly-Compensated Employees. .............................................. 5

11

            **3.**    Plaintiff's Assertion that WAP Participants Lacked Bargaining Power is Meritless. .................................................. 6

12

            **4.**    The WAP Is Unfunded. .............................................................. 7

13

      **C.**    Plaintiff's Suggestion of a Conflict of Interest is Meritless. ............... 9

      **D.**    Plaintiff's Forfeitures Were Consistent with the Terms of the WAP. ................................................................................................ 10

14

      **E.**    The Determination that Plaintiff's Termination Resulted from a Restructuring Benefitted Plaintiff. .................................................... 13

15

      **F.**    The Absence of an Integration Clause is Irrelevant. .......................... 14

16

V.      CONCLUSION ...................................................................................... 15

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abatie v. Alta Health & Life Ins. Co.*,
  458 F.3d 955 (9th Cir. 2006) ...................................................................9, 10

*Alexander v. Brigham and Women's Physician's Organization, Inc.*,
  467 F. Supp. 2d 136 (D. Mass. 2006) *aff'd* 513 F.3d 37 (1st Cir. 2008) .....passim

*Belka v. Rowe*,
  571 F. Supp. 1249 (D. Md. 1983)...................................................4, 6, 8

*Carraba v. Randalls Food Markets, Inc.*,
  38 F. Supp. 2d 468 (N.D. Tex. 1999)..............................................6, 7

*Demery v. Extebank Deferred Comp. Plan (B)*,
  216 F.3d 283 (2d Cir. 2000) ...............................................2, 3, 4, 5

*Dependahl v. Falstaff Brewing Co.*,
  653 F.2d 1208 (8th Cir. 1981), cert. denied, 454 U.S. 968 (1981) ....................8

*Duggan v. Hobbs*,
  99 F.3d 307 (9th Cir. 1996) .............................................3, 4, 5, 6

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989) ...................................................................9, 13

*In re Battram*,
  214 B.R. 621 (Bankr. C.D. Cal. 1997) ..............................................4

*Satchwell v. Long John Silvers, Inc.*,
  1992 U.S. App. LEXIS 9519......................................................14

STATUTES

29 U.S.C. § 1051(2).................................................................3, 5

29 U.S.C. § 1144(a) ...............................................................14

§ 414(q)(1)(B) of the Internal Revenue Code ......................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OTHER AUTHORITIES**

DOL Advisory Op. 81-11A (Jan. 15, 1981) ................................................. 8

DOL Advisory Op. 90-14A (May 8, 1990) ................................................. 8

Fed. R. Civ. P. 56(c) ........................................................................ 2

## I.   **INTRODUCTION**

Plaintiff Steven Benhayon's ("Plaintiff") Opening Brief Re: 1)  Non-Applicability Of ERISA's Top Hat Exemption To The U.S. Wealth Accumulation Plan; And 2)  Defendants' Execution Of The U.S. Wealth Accumulation Plan In Bad Faith ("Opening Brief") fails to establish any claim under ERISA.  For the reasons set forth in Defendants' Memorandum of Points and Authorities In Support Of Its Motion For Partial Summary Judgment, and as amplified herein, there is no genuine dispute with respect to any material fact relating to Plaintiff's claim for benefits under the Royal Bank of Canada US Wealth Accumulation Plan (the "WAP" or the "Plan") and Defendants are entitled to judgment on this claim as a matter of law. Plaintiff has not, and cannot, establish that the WAP's Plan Administrator, the WAP Committee, abused its discretion in denying his claim for benefits.

It is undisputed that Plaintiff received a distribution of $1,161,876.79 from the WAP shortly before he was terminated in connection with a reduction in force and that the only amounts which remained credited to his WAP account at termination represented unvested employer contributions.  Plaintiff's argument that the WAP is not a "top hat" plan is irrelevant to whether Plaintiff is entitled to benefits under the Plan.  The only relevance of top hat status is that it exempts the plan from ERISA's minimum vesting provisions.  However, Plaintiff has not alleged in his complaint or Opening Brief that the WAP violates ERISA's minimum vesting provisions.

Even if this status were relevant, the WAP satisfies the requirements of a top hat plan.  As such, even if subject to ERISA, it is exempt from many of the requirements imposed ERISA plans, including but not limited to the vesting, participation, and fiduciary mandates.  For these reasons, as described more fully below, Defendants should be granted summary judgment on Plaintiff's claim for benefits under the WAP.

7579563_3

## II.   FACTUAL BACKGROUND

The factual background underlying this case, including Plaintiff's employment and participation history in the WAP and the relevant provisions of the WAP Plan Document are set forth at pages 2 through 8 of Defendants' Memorandum of Points and Authorities filed on July 22, 2009.  In the interest of brevity, those passages are incorporated by reference as if fully set forth herein.

## III.   STANDARD FOR SUMMARY JUDGMENT.

Summary judgment should be granted where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Plaintiff does not dispute that entry of summary judgment is appropriate in this case.  As set forth in Defendants' Memorandum In Support Of Its Motion for Partial Summary Judgment, and as amplified herein, entry of judgment in favor of Defendants and against Plaintiff is appropriate with respect to Plaintiff's claim for benefits under the WAP.

## IV.   ARGUMENT

### A.   The WAP's Status as a Top Hat Plan is Irrelevant to Plaintiff's Claim for Benefits.

Plaintiff's only reference to the potential relevance of the WAP's status as a top hat plan is found at page 7 of his Opening Brief where he asserts that non-top hat plans are subject to "a stringent set of statutory rules and attendant fiduciary duties under ERISA."  However, he does not identify which, if any, of those rules or duties were allegedly violated or implicated in the denial of Plaintiff's request for benefits, much less establish that the rule allegedly violated is one to which non-top hat plans are subject while top hat plans are not.  Top hat plans are exempt only from ERISA's participation, vesting, funding, and fiduciary provisions. *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000) (citing 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1)).  The only such issue even indirectly alleged by Plaintiff is that he is entitled to benefits that had not yet vested as of the date of his

7579563_3

1  termination.  However, he does not allege in his complaint, or argue in his Opening

2  Brief, that the WAP violates ERISA's minimum vesting provisions.  Absent such an

3  argument, whether the WAP is a top hat plan bears no relevance to his claims, and

4  there is no need for the Court to decide this issue.

5  **B.    The WAP Satisfies The Requirements Of A Top Hat Plan.**

6  Even if the WAP's status as a top hat plan were relevant, Plaintiff's argument

7  fails because the WAP meets the requirements of a top hat plan.  ERISA defines a

8  top hat plan as a plan that is "unfunded and is maintained by an employer primarily

9  for the purpose of providing deferred compensation for a select group of

10  management or highly compensated employees."  29 U.S.C. § 1051(2).  Top hat

11  plans are exempt from ERISA's participation, vesting, funding, and fiduciary

12  provisions.  *Demery*, 216 F.3d at (citing 29 U.S.C. §§ 1051(2), 1081(a)(3),

13  1101(a)(1)).  Plaintiff advances a number of arguments he claims warrant a finding

14  that the WAP did not qualify as a top hat plan.  The undisputed facts, and the

15  applicable law, however, foreclose his contention.

16  **1.    The WAP Limits Participation to a Select Group.**

17  Plaintiff contends that the WAP is not a top hat plan, because (as Dain

18  Rauscher represented to the Department of Labor when submitting the WAP's top

19  hat exemption notice), approximately 1200 employees were participating in the

20  WAP, which is more than the number permissible to constitute a "select group."

21  Opening Brief at 2.  This argument is devoid of factual or legal support.

22  Initially, *Duggan v. Hobbs*, the very case on which Plaintiff relies, makes clear

23  that the relevant test is not *how many* employees participate in the plan but whether

24  eligibility "is limited to a small *percentage* of the employer's entire work force."

25  *Duggan v. Hobbs*, 99 F.3d 307, 312 (9th Cir. 1996) (emphasis added).  Moreover,

26  "there is no existing authority that establishes when a plan is too large to be deemed

27  select."  *Alexander v. Brigham and Women's Physician's Organization, Inc.*, 467 F.

28  Supp. 2d 136, 143 (D. Mass. 2006) (internal quotation marks omitted) *aff'd* 513 F.3d

37 (1st Cir. 2008).  Plaintiff's only authority on the issue is *Darden v. Nationwide Mut. Ins. Co.*, a district court opinion which merely holds that a group comprising 18.7% of the employer's total workforce was too large to be considered "select" for purposes of the top hat exemption.  *Darden v. Nationwide Mut. Ins. Co.*, 717 F. Supp. 388, 397 (E.D.N.C. 1989) *aff'd* 922 F.2d 203 (4th Cir. 1991) *rev'd on other grounds*, 503 U.S. 318 (1992).  However, the Second Circuit subsequently held that a plan which covered 15.34% was not too broad to qualify as a top hat plan, so long as the other requirements of the test were satisfied.  *Demery*, 216 F.3d at 289.  The *Demery* court distinguished *Darden* on the grounds that the group there was both larger and not limited to management or highly compensated employees.  Specifically, in *Darden*, the average income of participating employees was comparable to that of other employees in the company at large.  *Id.* at 288.

Plaintiff has not made any showing regarding the *percentage* of RBC's employees who are eligible to participate in the WAP, other than her argument that it must be more than one percent of the company's workforce.  Opening Brief at 14:23-15:3.  The argument is both speculative and irrelevant, since numerous courts have found the "select group" requirement satisfied by much larger groups.  *See, e.g., Alexander v. Brigham and Women's Physician's Organization, Inc.*, 513 F.3d 37, 46 (1st Cir. 2008) (8.7% of company's workforce was a "select group"); *Belka v. Rowe*, 571 F. Supp. 1249, 1252 (D. Md. 1983) (up to 4.6%); *Duggan*, 99 F.3d at 312 (4.3%); *In re Battram*, 214 B.R. 621, 625 (Bankr. C.D. Cal. 1997) (3.1%).   In fact, During Plan years 2003 through 2007, only 7.11 to 14.91% of RBC's workforce was eligible to participate in the WAP.  [Second Sikich Decl.[1] ¶ 6, p. 1:19-24.]  Thus, at all relevant times, the group of WAP-eligible employees was below the threshold which *Demery* found acceptable, and in several years, below the thresholds found

---

[1] "Second  Sikich Decl." refers to the Second Declaration of Gabriela Sikich In Support Of Defendants' Motion For Partial Summary Judgment On Plaintiff's Claim For Benefits Under the Royal Bank of Canada US Wealth Accumulation Plan, filed concurrently herewith.

1  acceptable in other cases as well.  Accordingly, there is no support for Plaintiff's
2  argument that the WAP fails to qualify as a top hat plan because it is not limited to a
3  "select group."

4  **2. <u>The WAP Limits Participation to Management And/Or</u>**
   **<u>Highly-Compensated Employees.</u>**
5

6  Plaintiff further argues that the WAP does not meet the requirements of a top
7  hat plan because participation was not limited to executives, but rather extended to
8  the company's sales force, in his words "the working nuts and bolts of the RBC
9  system." Opening Brief at 17:21-24.  Once again, however, Plaintiff misses the
10 mark.  A plan qualifies as a top hat plan if it is limited to a select group of
11 "management *or* highly compensated employees." 29 U.S.C. § 1051(2)  (emphasis
12 added).  Where the participants qualify as "highly compensated employees," the
13 positions they hold are irrelevant for determining whether the plan qualifies for top
14 hat status.  *See Duggan*, 99 F.3d at 312 (top hat requirements satisfied where plaintiff
15 did not dispute that he was highly compensated); *Alexander*, 513 F.3d at 46 (plan for
16 highest earning surgeons in medical group was top hat plan).

17 It is beyond reasonable dispute that all of the employees who are (or were)
18 eligible to participate in the WAP were "highly compensated."   The average
19 earnings of all WAP-eligible employees from 2003 through 2007 were between
20 $269,156 and $345,307 per year.  [Second Sikich Decl. ¶ 7, p. 1:25-27.]  Thus, in
21 2003 through 2007, WAP-eligible employees earned at least 3 times as much as the
22 general workforce of WAP-participating subsidiaries, and in one year, earned 4.5
23 times as much. Id. ¶ 8, p. 1:28-2:3.  Accordingly, WAP-eligible employees were
24 highly compensated. *See Alexander*, 513 F.3d at 46 (plan contributors were highly
25 compensated where they earned five times the income of the workforce); *Demery*,
26 216 F.3d at 289 (plan-eligible employees were highly compensated where they
27 earned more than twice the average workforce earnings).

28

7579563_3

1    The fact that the WAP participants were highly compensated is further

2    supported by the definition of highly compensated taken by the Internal Revenue

3    Service during the relevant time period.  *See Belka*, 571 F. Supp. at 1253

4    (considering IRS standard for "highly compensated" in determining that plan

5    participants were within a "select group").  In 2007, the Internal Revenue Service

6    (IRS) defined the Highly Compensated Employee Limitation ("HCE") under

7    §414(q)(1)(B) of the Internal Revenue Code of 1986 using an earnings threshold of

8    $100,000 per year.  See IR-2008-118.  The WAP-eligible employees have always

9    easily exceeded this standard.

10              **3.     Plaintiff's Assertion that WAP Participants Lacked**
                         **Bargaining Power is Meritless.**
11

12   Plaintiff further contends that the WAP fails to qualify as a top hat plan

13   because WAP participants did not have the bargaining power to affect the terms and

14   conditions of the WAP.  Open Br. 15:4-18:5.  However, nothing in the statutory

15   definition of a top hat plan creates such a requirement.  Indeed, Plaintiff's entire

16   argument rests on a single district court opinion from outside this circuit, *Carraba v.*

17   *Randalls Food Markets, Inc.*, 38 F. Supp. 2d 468 (N.D. Tex. 1999), which, in turn,

18   relies on an opinion letter from the Department of Labor stating *its* views as to

19   Congress' reasons for exempting top hat plans from many of ERISA's

20   requirements.[2]  *See Carraba*, 38 F. Supp. 2d at 477.  Such opinions hardly provide

21   authoritative grounds to depart from the plain language of the statute and add

22   additional requirements to those enacted by Congress.  Not surprisingly, the *Carraba*

23   holding has come under heavy criticism.  *See Alexander*, 513 F.3d at 46-48.

24

25              [2] Plaintiff incorrectly asserts that *Carraba* "relied heavily on the Ninth
     Circuit's reasoning in *Duggan*," suggesting that it was nothing more than a logical
26   extension of that opinion.  Opening Brief at 15:20-22.  In fact, *Carraba* does not
     even cite to *Duggan*.  Moreover, while *Duggan* suggests that a participant's ability to
27   affect the terms and operation of the plan through negotiation may be a relevant
     factor in determining top hat status, it nowhere holds that such power is required.
28   Indeed, the *Duggan* court had no occasion to reach the issue, as it found that the
     plaintiff there did have such power.  *Duggan*, 99 F.3d at 312-13.

1    The *Alexander* court rejected *Carraba*'s (and Plaintiff's) position that a plan

2  does not qualify as a top hat plan unless its participants have bargaining power to

3  influence the terms and operation of the plan on multiple grounds.  First, the court

4  noted, the DOL opinion letter did not present itself as an interpretation of the

5  relevant statute or purport to define the requirements for top hat status under the

6  statute.  *Id.* at 47, 48.   Thus, by its own terms, it did not support the conclusion

7  which *Carraba* derived from it.  *Id*.   Second, neither the language of the statute nor

8  its legislative history "contains the slightest hint that courts would consider

9  employees' ability to bargain over the terms of their deferred compensation plans" in

10  determining top hat status.  *Id.* at 48.   To the contrary, the tests contained in the

11  statute seemed reasonably designed to effectuate the purpose ascribed to Congress by

12  the opinion letter.   *Id.* at 47.   For all the reasons, the *Alexander* court declined to

13  follow *Carraba*, as this Court should as well.  *Id.* at 47-48

14    Even if this Court rejects the better-reasoned opinion in *Alexander* and follows

15  *Carraba*, Plaintiff's argument would still fail because he provides no evidence to

16  support his assertion that WAP participants lacked bargaining power, arguing instead

17  that the fact of this lawsuit proves that *he* lacked such bargaining power.  However, it

18  could just as easily show that he did have power, but now regrets the deal that he

19  struck.  Since he offers no evidence to support his position, Plaintiff's argument

20  should be rejected.

21          **4.    The WAP Is Unfunded.**

22    On pages 18 through 20 of his Opening Brief, Plaintiff argues that the WAP is

23  not "unfunded" under ERISA, and that it therefore does not meet the definition of a

24  "top hat plan."  The lynchpin of Plaintiff's argument is that, "[a]s the WAP clearly

25  comprises Plaintiff's own contributions, RBC cannot claim that the WAP was

26  completely "unfunded' and thus top hat exempted."  Opening Brief at 19.   This

27  argument represents a material misrepresentation of the operation of the WAP and a

28  fundamental misunderstanding of the law.

1    ERISA does not define the circumstances under which a plan is "unfunded."

2    In examining that issue, the concept of funding a plan implies the existence of assets

3    held separately from the general assets of the employer.  A plan is unfunded where

4    there is no res (or property) separate from the general assets of the company.

5    *Dependahl v. Falstaff Brewing Co.*, 653 F.2d 1208, 1214 (8th Cir. 1981), cert.

6    denied, 454 U.S. 968 (1981).  See also *Belka*, 571 F. Supp. at 1251-52; DOL

7    Advisory Op. 81-11A (Jan. 15, 1981).  In this case, the undisputed evidence is that

8    the benefits under the WAP are paid from the general assets of the Company.

9    [Sikich Decl.,[3] ¶ 8, Exh. G, pp. 25 & 35-36 (2007 Plan Document §§ 2.4 & 8.2).]

10   Plaintiff has come forward with no evidence whatsoever of the existence of a

11   separate trust that would somehow cause the WAP to be considered funded under

12   ERISA.  Plaintiff's assertions to the contrary are meritless.

13   Furthermore, contrary to the implication Plaintiff asks the Court to draw,

14   Plaintiff did not contribute one red cent of his own money to the WAP.  What

15   Plaintiff and other participants did was agree, at a point before they became entitled

16   to payment, to opt to forego the future receipt of a portion of their compensation.

17   [Sikich Decl., ¶ 8, Ex. G, page 25, (2007 WAP Plan Document § 2.2)]  While

18   Plaintiff could have taken payment of these amounts, he chose instead to defer

19   receipt until a future date (hence the term "deferred compensation"), subject to a

20   potential return on investment in the interim.

21   This structure of deferred compensation is a well established model for top hat

22   plans. Top hat plans do not fail to be "unfunded" solely because their terms permit

23   employee-participants to elect to defer percentage of their compensation.  DOL

24   Advisory Op. 90-14A (May 8, 1990).  Plaintiff's assertion that the WAP is not a top

25   hat plan, because it is not unfunded, based on the fact that some of the balance in the

26

27   [3] "Sikich Decl." refers to the Declaration of Gabriela Sikich In Support Of
     Defendants' Motion For Partial Summary Judgment On Plaintiff's Claim For

28   Benefits Under the Royal Bank of Canada US Wealth Accumulation Plan, filed
     concurrently with Defendant's moving papers in support of this motion.

1   participants' accounts is derived from their deferred compensation is simply not the

2   law.  Defendants are entitled to judgment as a matter of law on this issue.

3   **C.   Plaintiff's Suggestion of a Conflict of Interest is Meritless.**

4          In his Opening Brief, Plaintiff insinuates the existence of some sort of conflict

5   of interest based on the administration of the WAP by the WAP Committee and

6   asserts that, as a result, "there were no checks and balances in place to ensure the just

7   enforcement of the WAP."  See Opening Brief at 22-23.  However, under ERISA's

8   statutory scheme, the "checks and balances" Plaintiff seeks are provided by the

9   judicial review of administrative determinations regarding benefits.  *See Firestone*

10  *Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09 (1989) (explaining ERISA's

11  remedial provisions, including judicial review of adverse benefit determinations).

12  Thus, Plaintiff's argument that there should be "checks and balances" and RBC's

13  administration scheme is somehow deficient find no support in ERISA or the case

14  law interpreting it.

15         As explained in Defendant's Memorandum of Points and Authorities in

16  support of this motion, that review is conducted under an abuse of discretion

17  standard where, as here, the plan grants the Plan Administrator discretion to make

18  determinations regarding benefits.  Thus, the alleged conflict of interest is relevant

19  only insofar as it might impact the level of deference owed to that decision.  *Abatie*

20  *v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968-9 (9th Cir. 2006)  In fact, there was

21  no conflict of interest here that would call for heightened scrutiny of the WAP

22  Committee's decision and, even if there was, that decision must still be affirmed

23  because no other interpretation of the WAP Plan provisions is possible.

24         Plaintiff is mistaken that the individuals who reviewed his claim for benefits

25  or his appeal had conflicting interests.  Under the terms of the WAP, Plaintiff's

26  benefits were payable by the Royal Bank of Canada because Plaintiff is a resident of

27  California.  [Sikich Decl., ¶ 8 Ex. G, page 35 (2007 WAP Plan Document § 8.2(a)-

28  (b).]  However, none the members of the WAP Committee who considered

9

Plaintiff's claim or appeal were employed by that entity. [Second Sikich Decl. ¶ 9, p. 2:4-13.] Since there was no structural conflict of interest, Plaintiff must point to other facts suggesting that the members of the WAP Committee were anything other than disinterested, which he has not done, or that these conflicting interests influenced their decision-making process. To the contrary, as Defendants have pointed out repeatedly, the decision to deny Plaintiff's claim is nothing more than a straightforward application of the terms of the WAP.

In addition, even if Plaintiff could show that a conflict of interest existed and affected the review of his claim, it would only mean that the Court would apply heightened scrutiny to the WAP Committee's decision rejecting his claim. *Abatie*, 458 F.3d at 968-9 (9th Cir. 2006) However, given the clear terms of the WAP regarding vesting and forfeiture, that decision must be upheld even under a *de novo* standard of review. Since the terms of the WAP permit only one conclusion, the existence of any alleged conflict of interest is immaterial.

### D.  Plaintiff's Forfeitures Were Consistent with the Terms of the WAP.

On pages 23 through 25 of his Opening Brief, Plaintiff argues that the WAP is "completely silent" on the issue of vesting with respect to termination without cause, and that this somehow renders the forfeiture of the unvested Company Contributions in Plaintiff's account "wrongful." Opening Brief at 24-25.  Plaintiff contends that a critical issue in this case is whether "the WAP [Plan'] was set up so as to specifically preclude benefit vesting and distributions to employees, like Plaintiff, who are terminated without cause," asserting that the terms of the WAP are "completely silent on the vesting and distribution of an employee's benefits when such an employee is terminated without cause." Opening Brief at 1.

This argument is specious. The WAP Plan Document expressly provides that, subject only to certain specifically enumerated exceptions, "all Company Contributions and Mandatory Deferred Compensation that are not vested on the participant's employment termination date shall be deemed forfeited, and such

participant's account shall be appropriately reduced." [Sikich Decl., ¶ 8, Exh. G, p. 29 (2007 WAP Plan Document § 4.5).] Those exceptions are (i) termination on account of death, disability or retirement, (ii) termination for cause, and (iii) termination due to restructuring. [Sikich Dec. ¶ 8, Ex. G, p. 28-29 (2007 WAP Plan Document §§ 4.2 (i) (ii)) & 4.4).] While the terms of the WAP impose more stringent provisions regarding vesting in situations in which the participant's termination is for cause, the general rule is that unvested Company Contributions are forfeited in the event of termination. [Sikich Decl., ¶ 8, Exh. G, p. 29 (2007 WAP Plan Document § 4.5).] The undisputed facts in this case are that the unvested Company Contributions in Plaintiff's account were forfeited in accordance with the terms of the WAP upon his termination. Plaintiff's claim for a distribution of those amounts therefore fails as a matter of law.

Plaintiff's quotation of the relevant terms of the WAP is inaccurate in the extreme. At pages 7 and 8 of his Opening Brief, Plaintiff includes a long block quotation not from the WAP plan document in effect at the time he presented his claim for benefits, but a Summary Description and Prospectus from 2003.[4] Even setting aside whether this document is properly part of the administrative record, it does far more to support Defendants' position than Plaintiff's. Indeed, Plaintiff has so altered and misquoted the text as to create the impression that it supports his position when, in fact, it refutes it. While the first paragraph of the block quotation accurately repeats the text of the document, the very next paragraph of the text has been omitted without any ellipses in the block quotation to signal its omission. That paragraph, moreover, directly contradicts the argument for which Plaintiff cites the document, stating:

---

[4] The relevant document is attached to Plaintiff's <u>Amended</u> Supplement To The Administrative Record, filed on July 31, 2009. Plaintiff cites this document as "SAA 62," which, he explains refers to the page bearing bates-stamp no. 62 in the "Plaintiff's Supplement to the Administrative Record." *See* Opening Brief at p. 4:23-26 (footnote 6).

7579563_3

1

2   **Distributions that are made prior to the date on which Matching**

3   **Contributions, Mandatory Deferred Compensation or Special**

4   **Deferred Compensation are vested will, in general, result in the**

5   **forfeiture of such contributions.**

6   [Pl.'s Amended Suppl. To The Admin. Record, [dkt. # 37], filed July 31,

7   2009, at 00062 (2003 Summary Description and Prospectus p. 7).]

8   The next two paragraphs of the block quotation repeat some of the text of the

9   following paragraph in the document, but again language has been added or omitted

10  without proper use of ellipses or brackets to signal alterations.  [*Compare* Opening

11  Brief at 8:3-9 *with* Pl.'s Amended Suppl. To The Admin. Record, [dkt. # 37], filed

12  July 31, 2009, at 00062 (2003 Summary Description and Prospectus p. 7).]

13  Plaintiff's brazen misuse of this document is worthy of judicial admonition, if not

14  sanction.

15      Plaintiff's citation to the distribution provisions of the WAP Plan Document is

16  only slightly less misleading.  At page 4 of his Opening Brief, Plaintiff points out

17  that the WAP provides special rules for distribution upon separation.  Opening Brief

18  4:3-8.  What Plaintiff glosses over, however, is that it is the "Account Balance"

19  which is subject to distribution.  And Section 4.5 of the WAP provides in

20  unambiguous language that "[e]xcept as otherwise specifically set forth herein, all

21  Company Contributions . . . that are not vested on the participant's employment

22  termination date shall be deemed forfeited, *and such participant's account shall be*

23  *appropriately reduced.*"  [Sikich Decl., ¶ 8, Exh. G , p. 29 (2007 WAP Plan

24  Document § 4.5).]  Thus, after termination, any unvested Company Contributions are

25  no longer included in the "Account Balance" and the distribution provisions in

26  Section 5 of the WAP have no bearing on the treatment of these forfeited amounts.

27

28

**E.      The Determination that Plaintiff's Termination Resulted from a Restructuring Benefitted Plaintiff.**

At page 22 of his Opening Brief, Plaintiff attacks the fact that Plaintiff's termination was deemed by the Committee to have been the result of a restructuring.[5] Plaintiff points out that Section 4.4 of the 2007 WAP provides:

> In the event a participant ceases to be employed by the Company, any Participating Subsidiary and any other affiliate of the Company due to an organizational restructuring (as determined in the sole discretion of the Committee), all Mandatory Deferred Compensation in such participant's account shall become vested, but all unvested Company Contributions shall be forfeited.

[Sikich Dec. ¶ 8, Ex. G, p. 29 (2007 WAP Plan Document § 4.4).]

As Plaintiff notes, the Committee is vested with discretion to make the determination as to whether a participant's termination is the result of a restructuring. However Plaintiff has not shown that the Committee abused its discretion in characterizing the reduction in force which eliminated his position as a restructuring, only that he disagrees with that interpretation of the plan language.  The relevant inquiry, however, is whether the Committee's interpretation was so unreasonable as to amount to an abuse of discretion.  *Firestone*, 489 U.S. at 114-15.  Short of that level, the Court must defer to the Committee's interpretation of the WAP Plan Document.

Moreover, even if Plaintiff were correct that section 4.4 does not apply to his termination, it would make no difference, since section 4.4 is more lenient than the general forfeiture provision in section 4.5.  Under section 4.4, any Mandatory Deferred Compensation in his account would have vested (it would not have

---

[5] Plaintiff inaccurately states that there is no record that the WAP Committee actually met and considered his initial request for accelerated vesting which he presented in November 2007.  In fact, the Committee considered and rejected the claim at its meeting on December 7, 2007, as reflected in the agenda of that meeting and the minutes entered subsequently.  These documents are attached to the Sikich Declaration filed on July 22, 2009 as Exhibits K and L, respectively.

otherwise) and only Company Contributions would be forfeited.  [Sikich Dec. ¶ 8, Ex. G, p. 29 (2007 WAP Plan Document § 4.4).]  However, the only amounts remaining in Plaintiff's WAP account at the time of his termination were unvested Company Contributions, which are forfeited upon termination under both sections 4.4 and 4.5.  Thus, whichever section governs, Plaintiff was not entitled to vesting of the amounts he seeks by this lawsuit.

### F.   The Absence of an Integration Clause is Irrelevant.

Finally, at page 25 of his Opening Brief, Plaintiff argues that the absence of an integration clause means that the terms of the WAP do not represent the entire agreement of the parties.  Opening Brief at 25.  This argument is absurd.  The interpretation of the terms of the Plan is vested in sole discretionary authority of the WAP Committee.  [Sikich Decl., ¶ 8, Exh. G, p. 34 (2007 WAP Plan Document § 7.1).]  The ability to amend the terms of that document is expressly limited to action by either the Committee or the Board of Directors.  Plaintiff provides no factual support for any potential modification of the terms of the WAP Plan documents with respect to his participation therein.

Moreover, the only support Plaintiff provides for his argument consists of two unreported decisions of the Ninth Circuit.  Such citation is, of course, improper for the purpose for which Plaintiff offers these authorities.  See 9th Cir. R. 36.3.  Further, at least on of those relies on California law.  See *Satchwell v. Long John Silvers, Inc.,* 1992 U.S. App. LEXIS 9519 *5 n.1 (9th Cir. April 9, 1992).  Subject to certain exceptions not applicable in this case, Section 514(a) of ERISA provides that "the provisions of [Title I and Title IV of ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  Plaintiff's reliance on a state-law contract theory to support his claim is contrary to the well-settled law in this area and should be rejected.  Defendants are entitled to judgment as a matter of law on Plaintiff's claim for additional benefits under the WAP.

1

## V.   <u>CONCLUSION</u>

2      Plaintiff's Opening Brief focuses on irrelevant arguments attacking, generally,

3   the WAP and its administration.  Plaintiff fails to explain anywhere in his brief how

4   these arguments relate to his claim for benefits under the Plan.  This may be because

5   he must acknowledge that under the clear language of the Plan, he is not entitled to

6   the benefits he claims.

7      Based on the provisions of the WAP, and the Administrative Record, it is clear

8   that the Committee did not abuse its discretion in denying Plaintiff's claim for

9   benefits.  Defendants are entitled to judgment as a matter of law.

10

11  DATED:  August 5, 2009               OGLETREE, DEAKINS, NASH, SMOAK
                                         & STEWART, P.C.
12

13

14                                       By: _____/s/ Linda Claxton_____
                                                    Linda Claxton
15                                       Attorneys for Defendants
                                         ROYAL BANK OF CANADA, RBC
16                                       CAPITAL MARKETS CORPORATION
                                         (incorrectly named and sued as "RBC
17                                       WEALTH MANAGEMENT COMPANY,
                                         formerly RBC DAIN RAUSCHER,
18                                       INC."), and THE ROYAL BANK OF
                                         CANADA US WEALTH
19                                       ACCUMULATION PLAN

20

21

22

23

24

25

26

27

28