**BOHM, MATSEN, KEGEL & AGUILERA, LLP**
Kari M. Myron (Bar No. 158592)
Matthew J. Salcedo (Bar No. 237866)
695 Town Center Drive, Ste. 700
Costa Mesa, California 92626
Telephone:  (714) 384-6500
Facsimile:  (714) 384-6501
kmyron@bmkalaw.com

Attorneys for Plaintiff
STEVEN BENHAYON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>STEVEN BENHAYON, an Individual,<br><br>        Plaintiff,<br><br>        vs.<br><br>ROYAL BANK OF CANADA, a Canadian company, business form unknown; RBC WEALTH MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER, INC., business form unknown; THE ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN, formerly known as RBC Dain Rauscher Wealth Accumulation Plan; and, DOES 1 through 20,<br><br>        Defendants. | Case No.: CV08-06090 FMC (AGRx)<br>Assigned to Hon. Florence-Marie Cooper [Courtroom 750 (Roybal)]<br><br>**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES; DECLARATION OF KARI M. MYRON**<br><br>*[Filed concurrently with Plaintiff's Response to Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law, and Plaintiff's Separate Statement of Genuine Issues of Material Fact]*<br><br>**DATE:**    Not set.<br>**TIME:**    Not set.<br>**CTRM:**   Not set. |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiff STEVEN BENHAYON hereby submits his Reply Brief Re: ERISA Issues, as follows.

# *Table of Contents*

MEMORANDUM OF POINTS AND AUTHORITIES.................................2

I.      INTRODUCTION........................................................2

II.     THE CORRECT STANDARD OF REVIEW IS A MODIFIED ABUSE OF DISCRETION STANDARD, AS A CONFLICT OF INTEREST CLEARLY EXISTS...................................................................5

III.    EVEN UNDER THE MODIFIED ABUSE OF DISCRETION STANDARD, THE COURT CANNOT REVIEW THE ADMINISTRATIVE RECORD FOR AN ABUSE OF DISCRETION BECAUSE RBC HAS REFUSED TO PRODUCE THE WAP COMMITTEE MINUTES......................................6

IV.     RBC FAILS TO MEET ITS BURDEN OF PROOF AS TO IS AFFIRMATIVE DEFENSE THAT THE WAP IS A "TOP HAT" PLAN UNDER ERISA.......................................................................8

    A.  RBC Fails to Demonstrate Specific Facts That the WAP Was "Unfunded" .......................................................8

    B.  RBC Fails to Demonstrate Specific Facts That the WAP Covered A "Select Group" of Sales Employees....................................9

V.      AS THE 2007 PLAN DOES NOT CONTAIN AN INTEGRATION CLAUSE, IT IS NOT THE FINAL AGREEMENT OF THE PARTIES AND DOES NOT SUPERCEDE THE 3002 WAP PLAN ......................................10

VI.     PLAINTIFF REITERATES ITS REQUEST THAT THIS COURT EITHER DENY RBC'S MOTION, OR GRANT HIM A CONTINUANCE TO ENABLE PLAINTIFF TO PRESENT FACTS ESSENTIAL TO ITS OPPOSITION....................................................................12

VII.    RBC'S MOTION IS PROCEDURALLY DEFECTIVE AS RBC HAS FAILED TO FOLLOW THE FEDERAL AND LOCAL RULES...............16

VII.    CONCLUSION.........................................................18

1

### ***Table of Authorities***

2

## CASES

3  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)...............5, 6

4  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................8, 12

5  *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159 (10th Cir. 1998)........................17

6  *Brown v. Blue Cross & Blue Shield of Ala., Inc.,* 898 F.2d 1556 (11th Cir. 1990).......6

7  *Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468

8  (N.D. Tex. 1999)................. ................................................................10

9  *California v. Campbell*, 138 F.3d 772 (9th Cir. 1998)..............................12

10  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343 (5th Cir. 2001) ................17

11  *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996)........................9

12  *Culwell v. City of Fort Worth*, 468 F.3d 868 (5th Cir. 2006)........................13

13  *Doe v. Abington Friends Sch.*, 480 F.3d 252 (3d Cir. 2007)......................13

14  *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98

15  (6th Cir. 1995) ......................................................................17

16  *Firestone Tire & Rubber Co. v. Bruch* (1989) 489 U.S. 101.............................5

17  *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007)..............................8

18  *In re New Valley Corporation*, 89 F.3d 143 (1996)........................................9

19  *McCormick v. Fund American Cos., Inc.*, 26 F.3d 869 (9th Cir. 1994)................13

20  *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989)...........................6, 9

21  *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208 (11th Cir. 1995)..............16, 17

22  *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37 (1st Cir. 1999)..............13

23  *Smith v. School Bd. of Orange County*, 487 F.3d 1361 (11th Cir. 2007)..............17

24  *Tatum v. City & County of San Francisco,* 441 F.3d 1090 (9th Cir. 2006)............13

25  *United States v. Houston Pipeline Co.*, 37 F.3d 224 (5th Cir. 1994)..................17

26

## STATUTES

27  Fed.R.Civ.Proc. 8(c)...........................................................................8

28  Fed.R.Civ.Proc. 56(c)..........................................................................16

Fed.R.Civ.Proc. 56(f)...................................................................................12

**OTHER**

Local Rule 7-3.......................................................................................17, 18

Local Rule 7-4.......................................................................................17

Local Rule 7-9.......................................................................................17

iii

**TABLE OF CONTENTS/AUTHORITIES**

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **I.     INTRODUCTION**[1]

3   On September 17, 2008, Plaintiff filed his Complaint against the ROYAL

4   BANK OF CANADA, RBC WEALTH MANAGEMENT COMPANY, formerly

5   RBC DAIN RAUSCHER, INC., and THE ROYAL BANK OF CANADA US

6   WEALTH ACCUMULATION PLAN, formerly known as RBC Dain Rauscher

7   Wealth Accumulation Plan (collectively "RBC") alleging claims of relief for 1)

8   Violation of ERISA; 2) Violation of the Age Discrimination in Employment Act; and

9   3) Tortious Termination in Violation of Public Policy.  Plaintiff alleges that the US

10   Wealth Accumulation Plan (the "WAP") is a plan governed by ERISA.

11   On January 13, 2009, RBC filed its Answer, and raised the affirmative defense

12   that the WAP was not subject to ERISA.  On or about March 17, 2009, in response to

13   discovery by Plaintiff, RBC stated that for purposes of this litigation, it will not

14   oppose Plaintiff's contention that the Plan is an "employee benefit plan regulated and

15   governed by the ERISA," but that the WAP is a top hat plan exempt from ERISA's

16   rules and regulations.

17   On July 22, 2009, RBC filed a Motion for Partial Summary Judgment on

18   Plaintiff's Claim for Benefits under the Royal Bank of Canada US Wealth

19   Accumulation Plan (the "MSJ").  In the MSJ, RBC maintains its contention that even

20   if the WAP is an ERISA plan, it is nonetheless exempt from ERISA's rules and

21   regulations as a top hat plan.

22   ///

23

24

---

25   [1]On July 31, 2009, Plaintiff filed an *Ex Parte* Application for an Order Continuing the
ERISA Reply Brief Due Date, or, in the Alternative, for an Order Shortening Time To
26   Depose RBC's PMK and Shortening Time for RBC to Respond to Request for Production of
Documents at Time of PMK Deposition.  In a good faith effort to comply with this Court's
27   Simultaneous Briefing Order and to preserve its rights in this litigation, Plaintiff hereby
submits his "Reply Brief" and also opposes RBC's summary judgment motion.  In so doing,
28   Plaintiff does not waive its rights or arguments contained in the *Ex Parte* Application.

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

**RBC has the burden of Proof as to its affirmative defenses.** As is well settled, the party raising an affirmative defense has the burden of proving it.  Thus, RBC has the burden of proving that the WAP is a top hat plan, exempt from ERISA's rules and regulations. Plaintiff submits that RBC has failed to do so.

1. The WAP does not meet the <u>quantitative</u> requirement of a "select group" because, pursuant to RBC's letter to the Department of Labor dated March 13, 2001, the WAP covered approximately 1,200 employees, which far exceeds the relative number of participants that are allowed in the case law to constitute a "select group."

2. Plaintiff argues that the WAP does not meet the <u>qualitative</u> requirement of a "select group," because pursuant to the case law, each of the WAP's sales employees do not have the requisite bargaining power to substantially influence the specific terms and conditions of the WAP.

3. Plaintiff argues that the WAP is not an "<u>unfunded</u>" plan as required under ERISA, because the WAP mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets.

**Issues for Determination by the Court.**  If the Court finds that the WAP is not a top hat plan, then it must determine whether RBC violated its fiduciary duties owed to Plaintiff under ERISA in denying the vesting and distribution of his WAP benefits.

If the Court finds that the WAP is a top hat plan, then it must determine whether the WAP Committee abused its discretion in denying Plaintiff the vesting and distribution of his WAP benefits.

In order to make findings with respect to the secondary issues, to wit, violations of fiduciary duties and/or abuse of discretion in denying benefits, the Court must look to the controlling plan provisions.  The 2007 WAP Plan is without an integration clause thus it cannot be found to be the final agreement of the parties

3

superseding all other WAP Plans, including the 2003 WAP Plan.  This is a critical determination in that when Plaintiff agreed to participate in the WAP, he was provided with the 2003 WAP Plan and relied on the 2003 WAP Plan, which differs substantially from the 2007 WAP Plan. As such Plaintiff asserts that the Court must find that the 2003 WAP Plan controls. The 2003 WAP Plan allows an employee who "separates" from employment with RBC before the vesting date and distribution date of his or her benefits to still receive distributions from RBC. The 2003 WAP Plan defines the term "Separation" as "the date of a Plan Participant's separation of employment from the Company." In contrast, the 2007 WAP Plan sets forth certain and distinct <u>types</u> of separation from RBC, including death, disability, retirement, termination for cause, and termination due to restructuring. Termination <u>without cause</u>, such as an employee's separation from RBC due to a reduction in force or other arbitrary decision, is omitted from the 2007 WAP Plan. Also, conspicuously omitted the 2007 WAP Plan is any definition of the term "restructuring."

Finally, the Court cannot ignore the inherent conflict of interest presented.  As the RBC employees who were charged with the WAP's administration were the same employees who were responsible for the WAP's enforcement and the hiring and firing of RBC employees, there were no checks or balances in place to ensure that the Committee members did not abuse their discretion in denying WAP benefits to participants such as Plaintiff. The WAP was set up such that it speaks to the vesting and distributions of benefits predicated on specific, enumerated situations (death, disability, retirement, termination *for cause*, and "restructuring,") it is **completely silent** as to the contingency of an employee's termination *without cause*. Notwithstanding this, the Committee determined that Plaintiff had forfeited his entitlement to benefits by virtue of "restructuring" despite the fact that this was not the reason for his involuntary termination.

///

///

4

## II. __THE CORRECT STANDARD OF REVIEW IS A MODIFIED ABUSE OF DISCRETION STANDARD, AS A CONFLICT OF INTEREST CLEARLY EXISTS__

In *Firestone Tire & Rubber Co. v. Bruch* (1989) 489 U.S. 101, the Supreme Court held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, __that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion__.'" *Id.* at 115.  (Emphasis added.)

Here, as argued in Plaintiff's Opening Brief, the WAP is __completely silent__ as to the contingency of an employee's termination *without cause*, i.e., involuntary lay-offs and reductions in force.  While the WAP speaks to the vesting and distributions of Company Contributions upon an employee's separation from RBC due to death, disability, retirement, termination *for cause*, and "restructuring" (which is not even defined), a huge gap exists as to termination *without cause.*

As the RBC employees who were charged with the WAP's administration were the same employees who were responsible for the WAP's enforcement and the hiring and firing of RBC employees, there were no checks or balances in place to ensure that the Committee members did not abuse their discretion in denying WAP benefits to participants such as Plaintiff. This is particularly troubling inasmuch as there is no language in the WAP addressing the vesting and distribution of WAP benefits where an employee is <u>terminated</u> without cause.  It is one thing to require an employee to be employed at the time of vesting, but quite another to <u>terminate</u> an employee without cause, so as to deprive the employee of a benefit.  Plaintiff submits that a conflict of interest existed in that the WAP was deliberately and purposefully silent on the issue so that when employees like Plaintiff were just months away from their vesting and distribution date, RBC was free to terminate such employees without having to pay any benefits.

As the Ninth Circuit held in *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955

5

1  (9th Cir. 2006), "to the extent that [the administrator] has discretion to avoid paying
2  claims, it thereby promotes the potential for its own profit." *Id.* at 967; *Brown v. Blue*
3  *Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1561 (11th Cir. 1990) (an
4  administrator's role as a fiduciary role lies in conflict with its role as a profit-making
5  entity).   When a pension plan is controlled by the employer – or in this case, a
6  committee of personnel charged with controlling the plan – "there is always an
7  incentive for the employer/administrator to deny benefits." *Miller v. Eichleay*
8  *Engineers, Inc.* 886 F.2d 30, 33-34 (3d Cir. 1989).

9        In *Abatie*, the court stated that "a conflicted administrator … may find it
10 advisable to bring forth affirmative evidence that any conflict did not influence its
11 decision-making process." *Abatie, supra,* 458 F.3d at 969.   However, as will be
12 shown below, RBC has completely gone out of its way to ***withhold*** affirmative
13 evidence that any conflict did not influence its decision-making process – namely, the
14 minutes of the WAP Committee relating to Plaintiff's denial of benefits.

15       Given that a conflict of interest exists, Plaintiff respectfully requests that the
16 Court weigh the conflict as a factor in its abuse of discretion standard of review.

17 **III.   EVEN UNDER THE MODIFIED STANDARD FO REVIEW, THE**
18 **COURT CANNOT REVIEW THE ADMINISTRATIVE RECORD FOR**
19 **AN ABUSE OF DISCRETION BECAUSE RBC HAS REFUSED TO**
20 **PRODUCE THE WAP COMMITTEE MINUTES**

21       RBC states that as the WAP Committee was vested with discretionary authority
22 to make decisions under the plan, "The court's only role is to review the plan
23 administrator's decision for an abuse of discretion." (*See* MSJ 9:5-9.)

24       RBC goes on to state that an abuse of discretion can only be found if "the
25 administrator relied on 'clearly erroneous findings of facts in making benefit
26 determinations'" and that "the administrator's decision will be affirmed, as long as
27 there is 'substantial evidence to support the decision[.]'" (*See* MSJ 9:5-9; 22-25.)
28 RBC continues in pertinent part:

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

> "[T]he Committee correctly determined the relevant facts" and "[n]othing in the facts presented to the Committee supported a determination that Benhayon was entitled to vest in the Company Contributions in his WAP account. To the contrary, the factual record presented to the Committee fully supported its decision to decline to accelerate the vesting of the Company Contributions in Benhayon's WAP account."

(*See* MSJ 10:6-8; 11:17-22.)

Here, the WAP Committee was the WAP's administrator. While RBC is adamant that the Committee did not abuse its discretion in relying on the facts before it, RBC is inexplicably withholding the exact Committee minutes that encapsulate all "substantial evidence" that the Committee purportedly considered to support its decision regarding Plaintiff's denial of benefits.[2] Without bringing these Committee minutes to light, both this Court and Plaintiff will be in the dark as to whether or not the Committee relied on "clearly erroneous findings of fact" in making its decision to deny Plaintiff's benefits.

RBC cannot be allowed to hold us and hit us at the same time. On the one hand, RBC wants this Court to enter summary judgment in its favor, finding that the Committee did not abuse its discretion in making its decision to deny the accelerated vesting and distribution of Plaintiff's benefits. On the other hand, RBC refuses to produce the very minutes reflecting the Committee's decision. RBC cannot have it both ways. This is especially significant when RBC, itself, claims that the WAP Committee has "the full power and sole discretionary authority to make all determinations provided for in the Plan." (*See* MSJ 10:13-14.)

---

[2]Plaintiff notes that RBC delayed for nearly two months in agreeing to and finally producing a protective order, which forestalled Plaintiff from obtaining necessary discovery. RBC's delay caused the initial ERISA briefing schedule which was originally set for June 30, 2009 (for simultaneous "Opening Briefs") and July 30, 2009 (for simultaneous "Reply Briefs"), to be continued. Even *after* Plaintiff signed the protective order, RBC *still* refused to produce un-redacted versions of the Committee minutes.

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1    Absent an opportunity to review each document, all facts, and all relevant
2    evidence that the Committee purportedly reviewed and considered in formulating its
3    determination regarding the denial of Plaintiff's benefits, the Court will be forced to
4    impermissibly rule in a vacuum.  For this very reason, under *Anderson v. Liberty*
5    *Lobby, Inc., supra,* summary judgment must be denied. *Id.* at 250 n. 5.

6    **IV.   RBC FAILS TO MEET ITS BURDEN OF PROOF AS TO ITS**
7    **AFFIRMATIVE DEFENSE THAT THE WAP IS A "TOP HAT" PLAN**
8    **UNDER ERISA**

9    On January 13, 2009, RBC raised the affirmative defense that Plaintiff's claims
10   are barred, in whole or in part, because the WAP is not subject to the provisions of
11   ERISA.  Further, in its MSJ, RBC states that the WAP is a "top hat" plan under
12   ERISA, and that "because of the unique limitations on participation (to select and
13   highly compensated employees), top hat plans are exempt from many of ERISA's
14   mandates, including its participation, vesting, funding, and fiduciary provisions."
15   (*See* MSJ 13:3; 19-25.)   A "top hat" plan is an employee benefit plan "that is
16   unfunded and is maintained by an employer primarily for the purpose of providing
17   deferred compensation for a select group of management or highly compensated
18   employees." 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).

19   It is well settled that the party that raises an affirmative defense has the burden
20   of proving it.  Fed.R.Civ.Proc. 8(c); *see, e.g., Goodman v. Praxair, Inc.*, 494 F.3d
21   458, 464 (4th Cir. 2007).  As shown below, RBC has not met and cannot meet its
22   burden of proving that the WAP is a top hat plan.

23   **A. RBC Fails To Demonstrate Specific Facts That The WAP Was**
24   **"Unfunded."**

25   RBC argues that the benefits under the WAP are "unfunded." (*See* MSJ 13:7-
26   8.) As support for this proposition, RBC cites the Declaration of Gabriela Sikich,
27   which in turn cites sections 2.4 and 8.2 of the 2007 WAP Plan Document. (*See* MSJ
28   13:7-8.) Apart from making the statement in its MSJ and then citing to its 2007 WAP

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

Plan Document, RBC states no outside **facts** whatsoever supporting its conclusory assertion that the WAP is "unfunded."  This is significant inasmuch as the term "unfunded" is a term of art in ERISA litigation.

In *Miller v. Eichleay Engineers, supra,* the court held that an "unfunded" plan is a plan in which "**every** dollar provided in benefits is a dollar spent by ... the employer." *Id.* at 33-34.  (Emphasis added.)  In *Crumley v. Stonhard, Inc.*, 920 F.Supp. 589 (D.C. N.J. 1996), the court held that an "unfunded" plan is defined as "a plan in which **only** the employer provides the necessary funding for the benefits under the plan." *Id.* at 592-93.  (Emphasis added.)

RBC provides no **facts** whatsoever to satisfy the definition of "unfunded" in *Miller* or *Crumley.*  To the contrary, RBC admits that the WAP is made up of both Company Contributions **as well as** participants' contributions in the form of "Voluntary Deferred Compensation" and "Mandatory Deferred Compensation." (*See* MSJ 3:15-21; 4:27-5:10.)  As Plaintiff, himself, contributed funds that were not a part of RBC's general assets, the WAP is certainly not "unfunded" under the *Miller* and *Crumley* standards.

**B. RBC Fails To Demonstrate Specific Facts That The WAP Covered A "Select Group" Of Sales Employees.**

In *In re New Valley Corporation*, 89 F.3d 143, 148 (3d Cir. 1996) the court held that a "select group" for purposes of a top hat exemption:

> "[H]as both quantitative and qualitative restrictions.  In number, the plan must cover relatively few employees.  In character, the plan must cover only high level employees.  Because of these limitations, top hat plans form a rare sub-species of ERISA plans, and Congress created a special regime to cover them."

*Id.* at 148.

Quantitatively, the WAP covered **One Thousand Two Hundred (1,200)** U.S. sales employees. (*See* AA 09.) As argued in Plaintiff's Opening Brief, this figure is

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1    clearly too large to constitute a "select group" of RBC employees who participated in
2    the WAP. RBC does not address this issue anywhere in their MSJ.

3        Qualitatively, the WAP participants, including Plaintiff, do not meet the
4    standard set forth in *Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468
5    (N.D. Tex. 1999) to constitute a "select group." In *Carrabba*, the court held a group
6    of plan participants is a "select group" if each of the members of the group has the
7    bargaining power to substantially influence the benefits, terms, and operation of the
8    plan. *Id.* at 476.

9        Here, each of the WAP participants, including Plaintiff was not an executive of
10   RBC; rather, the RBC U.S. sales force was made up of mere employees who did not
11   have the requisite bargaining power to substantially influence the benefits, terms, and
12   operation of the WAP.

13        As RBC fails to demonstrate the WAP covered a "select group" as defined
14   above, the WAP was not a top hat plan exempted from ERISA.

15   **V.**    **AS THE 2007 WAP PLAN DOES NOT CONTAIN AN INTEGRATION**
16         **CLAUSE, IT IS NOT THE FINAL AGREEMENT OF THE PARTIES,**
17         **AND DOES NOT SUPERCEDE THE 2003 WAP PLAN**

18        RBC bases its entire MSJ on the terms, conditions, and language of the 2007
19   WAP Plan. However, this is error, because the 2007 WAP Plan does not contain a
20   merger clause or integration clause stating that it constitutes the final agreement of all
21   parties and supercedes all other WAP Plans – including the 2003 WAP Plan.

22        This is a critical point in that when Plaintiff first participated in the WAP, he
23   relied on the terms of the 2003 WAP Plan. Importantly, the 2003 WAP defined the
24   term "Separation" as "the date of a Plan Participant's separation of employment from
25   the Company." (*See* SAA 0059.) With respect to employees who "separated" from
26   RBC prior to the scheduled distribution date, the WAP provided as follows:

27            "**Distributions.** Upon electing to participate in the Plan, a
28            participant will make an irrevocable election with respect to the
            timing of the payment of the amounts credited to such

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

participant's accounts.  A participant may elect to have such distribution made either (i) upon the earlier of a specified date (which date must fall on the last day of a calendar quarter; provided that, any distribution shall be made prior to the last day of a calendar quarter if such distribution would result in payments to a participant in more than one calendar year) or the date of his … Separation if prior to such specified date, or **(ii) upon such Separation.**

[I]f the employee is no longer with RBC at the date of the scheduled distribution, such distribution shall be in two annual installments if the election is triggered by the participant's Separation prior to the date certain.

Upon Separation, the first installment shall be equal to 50% of all amounts deemed allocated to a participant's accounts on the first payment date, and the second installment shall be equal to the remainder of all amounts deemed allocated to such participant's accounts on the second payment date[.]"

(*See* SAA 0062.) (Emphasis added.)

Pursuant to the foregoing provision, on Plaintiff's date of separation from RBC on September 17, 2007, he was entitled to accelerated vesting and distribution provided that he had not forfeited such entitlement.  As to the issue of forfeiture, the 2003 WAP Plan provides:

"***Forfeiture of Matching Contributions and Other Amounts.*** If a participant ceases to be employees by RBC … due to his … gross or willful misconduct during the course of his … employment, including theft or commission of a gross misdemeanor or felony, all deemed investments credited to any Matching Stock Account or Matching Cash Account, any Special Deferred Compensation amount, and all Mandatory Deferred Compensation … will be forfeited, regardless of whether the vesting schedule has otherwise been satisfied with respect to any shares, or assets and the proceeds thereof will be deemed returned to the Company.  Also, all amounts credited to a participant's Matching Stock Account or Matching Cash Account, and Special Deferred Compensation

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

> amount, and all Mandatory Deferred Compensation ... that are not vested at the participant's employment termination date will be forfeited, <u>except</u> as otherwise described under 'Vesting' above."

(*See* SAA 00062.) (Emphasis added.)

It is undisputed herein that Plaintiff was not terminated for gross or willful misconduct during his employment with RBC. Rather, Plaintiff was arbitrarily terminated due to a reduction in force. As there is no recognized exception to accelerated vesting upon an employee's separation from RBC employment due to termination without cause, Plaintiff is entitled to the distribution of his due benefits.

## VI. <u>PLAINTIFF REITERATES ITS REQUEST THAT THIS COURT EITHER DENY RBC'S MOTION, OR GRANT HIM A CONTINUANCE TO ENABLE PLAINTIFF TO PRESENT FACTS ESSENTIAL TO ITS OPPOSITION</u>

Federal Rules of Civil Procedure, Rule 56(f), provides:

> "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order."

In *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, the U.S. Supreme Court held that under Rule 56(f), "summary judgment [is to] be refused where the non-moving party has not had the opportunity to discover information that is essential to his opposition." *Id.* at 250 n. 5.

The Ninth Circuit follows the same reasoning. In *California v. Campbell*, 138 F.3d 772 (9th Cir. 1998), the court held that pursuant to Rule 56(f), a district court

1   should continue a summary judgment motion upon a good faith showing that the

2   continuance is needed to obtain facts essential to preclude summary judgment. *Id.* at

3   779 citing *McCormick v. Fund American Cos., Inc.,* 26 F.3d 869, 885 (9th Cir. 1994).

4   Parties requesting a continuance pursuant to Rule 56(f) must show (1) that they have

5   set forth in affidavit form the specific facts that they hope to elicit from further

6   discovery, (2) that the facts sought exist, and (3) why the sought-after facts would

7   preclude summary judgment. *Tatum v. City & County of San Francisco,* 441 F.3d

8   1090, 1100 (9th Cir. 2006).

9        Requests for continuances under Rule 56(f) are construed and granted liberally.

10   *See Doe v. Abington Friends Sch.,* 480 F.3d 252, 257 (3d Cir. 2007); *Culwell v. City*

11   *of Fort Worth,* 468 F.3d 868, 871 (5th Cir. 2006). Indeed, when Rule 56(f) affidavit

12   preconditions are met, **"a strong presumption arises in favor of relief."** *Simas v.*

13   *First Citizens' Fed. Credit Union,* 170 F.3d 37, 46 n. 4 (1st Cir. 1999). (Emphasis

14   added.)

15        As set forth more fully in the declaration of Kari M. Myron (the "Myron

16   Declaration"), Plaintiff has scheduled the deposition of RBC's Person(s) Most

17   Knowledgeable ("PMK"). The PMK deposition is currently scheduled for August 31,

18   2009, which is beyond the date of Plaintiff's deadline to oppose RBC's MSJ.

19        Plaintiff seeks testimony from RBC's PMK regarding issues surrounding: the

20   administration, management, and operation of the WAP; the vesting and distribution

21   of WAP benefits; how the WAP Committee made its decisions regarding the vesting

22   and distribution of WAP benefits while the WAP was in effect; and how the WAP

23   Committee informed the WAP participants of the terms, conditions, and provisions of

24   the WAP.  (*See* Myron Declaration.)  Additionally, Plaintiff served a Request for

25   Production of Documents at the PMK Deposition, all categories of which relate to the

26   specific categories set forth in designating the PMK and all areas addressing pivotal

27   issues before the court, to wit: (1) is the WAP a top hat plan thus exempted from

28   compliance with ERISA; (2) whether the WAP covers a "select group" of employees;

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1    (3) whether the WAP is "unfunded;" and (4) whether the WAP set up in bad faith in

2    that it failed to address the vesting and distribution of WAP benefits upon a

3    participant's termination without cause. (*See* Myron Declaration.)

4        It must be noted that the PMK deposition and the attendant production request

5    are absolutely critical to enable Plaintiff to adequately oppose RBC's MSJ because

6    RBC has wholly refused to produce the contents of its WAP Committee minutes

7    concerning the denial of the vesting and distribution of Plaintiff's WAP benefits.[3]

8        As the Administrative Record reflects, in response to Plaintiff's request for

9    production of documents concerning the WAP Committee's denial and forfeiture of

10   his benefits, RBC produced a single-page document entitled "RBC US Wealth

11   Accumulation Plan ("WAP") Committee, April 7, 2008, Re: Mr. Steven Behnhayon

12   v. RBC Capital Markets Holdings (USA) Inc." (AA 303.)  This document contains a

13   paragraph regarding the "Background" of the matter, a paragraph regarding the

14   "Current   Status"   of   the   matter,   and   a   paragraph   regarding   entitled

15   "Recommendation."  The "Recommendation" paragraph provides in full:

16           "To follow the WAP plan document the recommendation is to
17           deny the request for accelerated vesting and distribution.
18           Under section 4.4 "Termination due to Restructuring" In (sic)
             the event a participant ceases to be employed by the Company
19           due to an organizational restructuring all Mandatory Deferred
20           Compensation  in  such  participant's  account  shall  become
             vested.   There are no provisions in the plan document to
21           provide for accelerated vesting on company contributions or
22

23   [3]This refusal to produce is a product of RBC's ongoing failure to abide by the discovery
24   process. Indeed, RBC frustrated and protracted the discovery process by demanding
     unreasonably heightened protection in its protective order would not produce certain records
25   until and unless such records were designated as "attorneys' eyes only."  Despite RBC's
26   demand for unreasonably heightened protection, it still refused to produce the minutes of the
     WAP Committee and instead produced 24 pages of blank pages marked "REDACTED" and
27   "CONFIDENTIAL."  As of the date of this writing, RBC has still refused to produce a
28   privilege log required by FRCP Rule 26(b)(5) concerning the multitude of privileges it
     asserted to several of Plaintiff's production requests.

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1  company match."

2  (AA 303.)

3  After this single-page document, there are **24 blank pages** of the WAP

4  Committee's minutes stamped **"REDACTED"** and **"CONFIDENTIAL"** without

5  further explanation.  (AA 304-327.) Because of RBC's redactions, the Committee

6  minutes, which are absolutely critical to the issue of the Committee's abuse of

7  discretion, are wholly devoid of evidence relevant to the Committee's discussion

8  regarding Plaintiff's wrongful denial of benefits.  Thus, testimony from the PMK

9  deposition is necessary to answer the following questions, among others: Who on the

10  Committee made the decision to deny Plaintiff's benefits? Did the same people on the

11  Committee also have any input or influence in which sales employees were

12  terminated when the Committee first learned that RBC was going to be reducing its

13  U.S. work force? How did the Committee come to its determination to deny Plaintiff

14  his benefits?  What methods, procedures, and types of voting were used to make the

15  decision?   What documents were provided to the Committee for purposes of

16  evaluating the relief requested? Who selected these documents? Who presented

17  Plaintiff's case?

18  Further, as RBC raises as an affirmative defense that the WAP was a top hat

19  plan, it is necessary to examine the PMK as to the elements of the top hat definition

20  under ERISA, namely – How did the Committee define a "select group" to be

21  covered by the WAP?  What percent of RBC's Fixed Income Capital Markets sales

22  work force was invited to participate in the WAP?  What percent of RBC's Fixed

23  Income Capital Markets sales work force actually participated in the WAP?  What

24  were the methods by which the Committee deemed the WAP to be "unfunded" as it

25  claims, despite the fact that Plaintiff's contributions did not come from RBC's general

26  assets?  How did RBC maintain employee and company contributions to the WAP,

27  i.e., were such contributions held in trust and secured from creditors, or were they

28  part of RBC's general assets and thus unsecured?  If the company contributions were

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1  indeed unsecured, were the participating employees informed of this?   These
2  questions are all critical to whether a top hat plan exists.   Further, these are all
3  questions that RBC has failed to answer or address in its MSJ.   As these ERISA
4  issues have gone unanswered by RBC, what was the focus of RBC's MSJ?

5      Given the fact that RBC refuses to unveil the Committee minutes that reflect
6  the Committee's rationale in deciding to deny Plaintiff the vesting and distribution of
7  his WAP benefits, along with the fact that the deposition of RBC's PMK is scheduled
8  after the deadline for the simultaneous Reply Briefs herein, a continuance of RBC's
9  MSJ under Rule 56(f) is justified as the anticipated discovery will be fruitful and
10 certainly aid Plaintiff in opposing the motion.

## VII.   RBC'S MOTION IS PROCEDURALLY DEFECTIVE AS RBC HAS FAILED TO FOLLOW THE FEDERAL AND LOCAL RULES

13     In order to file a motion for summary judgment, the moving party must comply
14 with the Federal Rules as well as the Central District's Local Rules.   Here, RBC filed
15 its MSJ without complying with either.   As such, RBC's MSJ is defective and must
16 be overruled.

### A. RBC Failed To Designate A Hearing Date For Its Motion.

18     Federal Rules of Civil Procedure, Rule 56(c) provides:

> "**Serving the Motion; Proceedings.** The motion must be served at least 10 days **before the day set for the hearing**. An opposing party may serve opposing affidavits before the hearing day. The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

25 Fed.R.Civ.Proc. 56(c). (Emphasis added.)

26     The purpose of this 10-day notice rule is to allow non-moving parties a specific
27 period of time in which to marshal their resources and offer into the summary
28 judgment record additional materials and arguments. *See Restigouche, Inc. v. Town*

1  *of Jupiter,* 59 F.3d 1208, 1213 (11th Cir. 1995).  The 10-day notice rule allows a non-

2  moving party time to "put its best foot forward" in opposing the motion. *United*

3  *States v. Houston Pipeline Co.*, 37 F.3d 224, 228 (5th Cir. 1994).  Moreover, the 10-

4  day notice rule is an **essential and mandatory** component of the Rule, and not a

5  mere technicality.  *See Smith v. School Bd. of Orange County*, 487 F.3d 1361, 1367-

6  68 (11th Cir. 2007); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 350 (5th

7  Cir. 2001); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998);

8  *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir.

9  1995).  (Emphasis added.)

10        Local Rule 7-4 provides in part that: "On the first page of the notice of motion

11  … there shall be included … **the date and time of the motion hearing**[.]"  "The

12  Court may decline to consider the motion" unless it meets this requirement. L.R. 7-4.

13  (Emphasis added.)

14        Likewise, Local Rule 7-9 mandates that the opposing party shall serve its

15  opposition "not later than fourteen (14) days **before the date designated for the**

16  **hearing of the motion**." L.R. 7-9. (Emphasis added.)

17        As emphasized, both the federal and the local rules contemplate the moving

18  party's **designation of a hearing date** in order to set an opposition deadline.

19        Here, RBC failed to designate a hearing date for its MSJ.  In so doing, RBC has

20  deprived Plaintiff of proper notice for serving and filing its opposition papers.  As the

21  10-day notice rule is an **essential and mandatory** component of the Rule, and not a

22  mere technicality, the Court should overrule RBC's MSJ as being procedurally

23  defective, or, as argued above, continue the MSJ to allow Plaintiff adequate notice

24  time to properly oppose the MSJ.

25        **B. RBC Failed To Meet And Confer With Plaintiff's Counsel Prior To**

26              **Filing The Motion.**

27        RBC filed its MSJ without meeting and conferring with Plaintiff's counsel in

28  advance of filing the MSJ.  Local Rule 7-3 "Conference of Counsel Prior to Filing of

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

Motions" provides in pertinent part:

> "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly...the substance of the contemplated motion and any potential resolution.... [T]he conference shall take place at least twenty (20) days prior to the filing of the motion."

Here, Defense counsel did not contact Plaintiff's counsel at any time prior to filing the MSJ. Had Defense counsel met and conferred with Plaintiff's counsel as required under Local Rule 7-3, Plaintiff's counsel could have at least anticipated the MSJ and taken steps to adequately oppose it.

Given the foregoing, the Court should overrule RBC's MSJ as it wholly fails to comport with both the Federal Rules of Civil Procedure as well as this Court's Local Rules.

## VIII. CONCLUSION

Based on the foregoing, Plaintiff STEVEN BENHAYON respectfully requests that this Court find that: the WAP is not a top hat plan; the 2007 WAP was not a full an final integration of the entire WAP agreement – such that the provisions, terms, and conditions of the 2003 WAP Plan control in this matter; and that the WAP was set up in bad faith to prevent or frustrate Plaintiff's entitlement to the vesting and distribution of benefits due to him under the WAP because it specifically omitted and failed to address the issue of a participant's vesting and distributions upon termination without cause.

Reviewing the MSJ, it is abundantly evident that RBC has failed to set forth specific, non-conclusory facts that the WAP is a top hat plan. The Court gave the parties the opportunity to *resolve* this issue by ordering the simultaneous briefing of the issue. RBC has not met its burden of proving its affirmative defense that the WAP is a top hat plan.

As RBC has conceded that the WAP is an ERISA plan for purposes of this litigation, and as RBC has failed to meet its burden in showing the WAP was a top

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1 | hat plan, Plaintiff respectfully requests that this Court deny RBC's MSJ and proceed

2 | in ruling on the ERISA issues herein in accordance with the rules and regulations set

3 | forth under ERISA.

4 |

5 | DATED: August ___, 2009     **BOHM, MATSEN, KEGEL & AGUILERA, LLP**

6 |

7 |                             By:   _____

8 |                                   Kari M. Myron

9 |                                   Matthew J. Salcedo,
                                      Attorneys for Plaintiff STEVEN

10 |                                  BENHAYON

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

## DECLARATION OF KARI M. MYRON IN SUPPORT OF REQUEST FOR
## RELIEF UNDER FED.R.CIV.PROC. § 56(f)

I, Kari M. Myron, hereby declare as follows:

1.     I am an attorney at law duly licensed to practice before all courts of the State of California and the United States District, Central District of California.  I am a partner of the law firm of Bohm, Matsen, Kegel & Aguilera, LLP, which represents Plaintiff STEVEN BENHAYON in this matter.  I make this Declaration based upon my own personal knowledge, except as to those matters which are stated on information and belief and as to those matters I believe them to be true.  If called and sworn as a witness, I could and would competently testify to the following.

2.     Plaintiff has scheduled the deposition of RBC's Person(s) Most Knowledgeable ("PMK").  The PMK deposition is currently scheduled for August 31, 2009, which is beyond the date of Plaintiff's deadline to oppose RBC's MSJ.

3.     On July 22, 2009, RBC filed a Motion for Partial Summary Judgment ("MSJ") as to some of the ERISA issues herein.

4.     RBC filed the MSJ without complying with Local Rule 7-4, which provides in part that: "On the first page of the notice of motion … there shall be included … **the date and time of the motion hearing**[.]"  "The Court may decline to consider the motion" unless it meets this requirement.  L.R. 7-4. (Emphasis added.)

5.     RBC filed the MSJ without complying with Local Rule 7-9, which mandates that the opposing party shall serve its opposition "not later than fourteen (14) days **before the date designated for the hearing of the motion**."  L.R. 7-9. (Emphasis added.)

6.     RBC failed to designate a hearing date for its MSJ.  In so doing, RBC has deprived Plaintiff of proper notice for serving and filing its opposition papers.  As the 10-day notice rule is an **essential and mandatory** component of the Rule, and not a mere technicality.

///

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

7.    RBC filed the MSJ without complying with Local Rule 7-3, which provides that "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly…the substance of the contemplated motion and any potential resolution…. [T]he conference shall take place at least twenty (20) days prior to the filing of the motion."

8.    Defense counsel did not contact me at any time prior to filing the MSJ. Had Defense counsel met and conferred with me as required under Local Rule 7-3, the issues and arguments sought to be raised by RBC would have been known so as to take steps to adequately oppose them.

9.    In addition to the foregoing issues, I prepared and forwarded a lengthy (Twenty Nine Page) Meet and Confer Letter to Counsel for RBC on July 10th, 2009, outlining the deficiencies in the discovery responses provided by his client, especially those responses surrounding the requests made concerning ERISA claim and the absence of a privilege log given the multiple redacted pages produced despite a comprehensive stipulation for a protective order.

10.    As a result of RBC's failure to comply with the foregoing rules, Plaintiff was deprived of adequate notice time to properly oppose the MSJ.

11.    I am aware of the provisions of Federal Rules of Civil Procedure, Rule 56(f), and make this declaration in support of a denial of RBC's MSJ or a continuance of the MSJ to enable the deposition of RBC's PMK to be taken in this matter as well as the production of documents at the PMK deposition to occur.

12.    I anticipate testimony on the following subjects to be collected at the PMK deposition:

    a.    All aspects of the formation and design of the U.S. Wealth Accumulation Plan (hereinafter "WAP"), including but not limited to issues related to voluntary contribution components, mandatory contribution components, employer matching components, and employer bonus components, as well as issues relating to any and all actuarials, studies and projections

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1    regarding the feasibility of the WAP, and studies and projections

2    regarding the affordability of the WAP.

3    b.  All aspects of the operation of the WAP, including but not limited to

4        issues related to voluntary contribution components, mandatory

5        contribution components, employer matching components, and employer

6        bonus components, as well as any and all revisions, amendments,

7        corrections,  and restatements made to the WAP and all summaries

8        thereof for all years in which the WAP operated.

9    c.  All aspects of the administration and management of the WAP, including

10       but not limited to issues related to day-to-day costs of the WAP's

11       administration and management, day-to-day liabilities and/or obligations

12       of the WAP's administration and management, as well as the

13       administration  and  management  of  all  voluntary  contribution

14       components, mandatory contribution components, employer matching

15       components, and employer bonus components under the WAP.

16   d.  All aspects of the funding of the WAP, including but not limited to

17       issues related to the sources of the WAP's funding such as the general

18       assets used to fund the WAP, if any, the voluntary contribution

19       components, mandatory contribution components, employer matching

20       components, and employer bonus components, and the segregation of the

21       voluntary contribution components, mandatory contribution components,

22       employer matching components, and employer bonus components of the

23       WAP.

24   e.  All aspects of any distributions in years 2006, 2007, and 2008, of

25       voluntary contribution components, mandatory contribution components,

26       employer matching components, and employer bonus components,

27       pursuant to the vesting schedules relating to said years.

28   f.  All aspects of any the number of participants in the WAP company-

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

wide, from year 2001 to year 2007, who participated in the WAP's voluntary contribution components, mandatory contribution components, employer matching components, and employer bonus components, pursuant to the vesting schedules relating to said years.

g.  All aspects of how RBC instructed, explained, discussed, or otherwise informed its Fixed Income Capital Market sales employees of the terms, conditions, requirements and any other steps said sales employees had to take in order for the vesting and distribution of voluntary contribution components, mandatory contribution components, employer matching components, and employer bonus components.

h.  All aspects of how the WAP Committee reviewed, made decisions on, considered, and determined any claims, demands, disputes or grievances regarding the vesting, distribution, and forfeiture of voluntary contribution components, mandatory contribution components, employer matching components, and employer bonus components.

13.  The testimony will most likely show that the WAP was not a top hat plan in that it did not cover a "select group" of employees as mandated under ERISA and in the case law, and that it was not an "unfunded" plan as mandated under ERISA and in the case law.

14.  The testimony will also most likely show that the WAP was set up in bad faith in that the WAP Committee was aware that the WAP failed to address the issue of benefit vesting and distribution upon an employee's termination without cause, and that in such case, the employee's benefit's would be forfeited.  Despite this knowledge, Defendants purposefully and deliberately omitted any provisions regarding the issue of benefit vesting and distribution upon an employee's termination without cause.

15.  The testimony will also most likely show that the 2007 WAP was not the final agreement of the parties in  that it did not have an integration clause expressly

23

1 | stating that it superceded all former agreements, in particular, the 2003 WAP, which
2 | Plaintiff relied upon when first signing up to participate in the WAP.

3 |     16.    The testimony is critical to opposing RBC's MSJ, and will preclude
4 | summary judgment because of the following:

5 |     a.  First, without top-hat exemption, the Court must treat the WAP as an
6 | ERISA plan (and RBC has already conceded that it is).  ERISA plans are
7 | subject to fiduciary duties arising out of common law regarding trusts.
8 | Thus, the Court will have to apply the common law regarding trusts to
9 | the alleged ERISA violations rather than simply apply an abuse of
10 | discretion standard to determine if the WAP Committee violated
11 | Plaintiff's rights.

12 |     b.  Second, in that there is no integration clause in the 2007 WAP, and that
13 | the provisions of the 2003 WAP are completely different from the 2007
14 | WAP, especially in terms of separation from the company and vesting
15 | and distribution procedures, Defendants' MSJ, which completely relies
16 | on the terms of the 2007 WAP, will necessarily be meritless.

17 |     17.    Indeed, RBC bases its entire MSJ on the terms, conditions, and language
18 | of the 2007 WAP Plan.  This is a critical point in that when Plaintiff first participated
19 | in the WAP, he relied on the terms of the 2003 WAP Plan.  Importantly, the 2003
20 | WAP defined the term "Separation" as "the date of a Plan Participant's separation of
21 | employment from the Company." (*See* SAA 0059.) With respect to employees who
22 | "separated" from RBC prior to the scheduled distribution date, the WAP provided as
23 | follows:

24 |     **"Distributions**. Upon electing to participate in the Plan, a
25 | participant will make an irrevocable election with respect to the
   | timing of the payment of the amounts credited to such
26 | participant's accounts.  A participant may elect to have such
   | distribution made either (i) upon the earlier of a specified date
27 | (which date must fall on the last day of a calendar quarter;
28 | provided that, any distribution shall be made prior to the last

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

day of a calendar quarter if such distribution would result in payments to a participant in more than one calendar year) or the date of his ... Separation if prior to such specified date, or **(ii) upon such Separation.**

[I]f the employee is no longer with RBC at the date of the scheduled distribution, such distribution shall be in two annual installments if the election is triggered by the participant's Separation prior to the date certain.

Upon Separation, the first installment shall be equal to 50% of all amounts deemed allocated to a participant's accounts on the first payment date, and the second installment shall be equal to the remainder of all amounts deemed allocated to such participant's accounts on the second payment date[.]"(*See* SAA 0062.) (Emphasis added.)

Pursuant to the foregoing provision, on Plaintiff's date of separation from RBC on September 17, 2007, he was entitled to accelerated vesting and distribution provided that he had not forfeited such entitlement.

18.     As to the issue of forfeiture, the 2003 WAP Plan provides:

"***Forfeiture of Matching Contributions and Other Amounts***. If a participant ceases to be employees by RBC ... due to his ... gross or willful misconduct during the course of his ... employment, including theft or commission of a gross misdemeanor or felony, all deemed investments credited to any Matching Stock Account or Matching Cash Account, any Special Deferred Compensation amount, and all Mandatory Deferred Compensation ... will be forfeited, regardless of whether the vesting schedule has otherwise been satisfied with respect to any shares, or assets and the proceeds thereof will be deemed returned to the Company.   Also, all amounts credited to a participant's Matching Stock Account or Matching Cash Account, and Special Deferred Compensation amount, and all Mandatory Deferred Compensation ... that are not vested at the participant's employment termination date will be forfeited, <u>except</u> as otherwise described under 'Vesting' above." (*See* SAA 00062.) (Emphasis added.)

25

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

19. It is undisputed herein that Plaintiff was not terminated for gross or willful misconduct during his employment with RBC. Rather, Plaintiff was arbitrarily terminated due to a reduction in force.

20. As there is no recognized exception to accelerated vesting upon an employee's separation from RBC employment due to termination without cause in the 2003 WAP, Plaintiff will show that he is entitled to the distribution of his due benefits.

21. Given the filing of RBC's MSJ without proper notice requirements, I have been prevented the opportunity to discover information that is essential to Plaintiff's opposition to the MSJ.

22. The Court should continue the MSJ herein because such a continuance is needed to obtain facts essential to preclude summary judgment.

23. The PMK deposition and the attendant production request are absolutely critical to enable Plaintiff to adequately oppose RBC's MSJ because RBC has wholly refused to produce the contents of its WAP Committee minutes concerning the denial of the vesting and distribution of Plaintiff's WAP benefits. This refusal to produce is a product of RBC's ongoing failure to abide by the discovery process. Indeed, RBC frustrated and protracted the discovery process by demanding unreasonably heightened protection in its protective order would not produce certain records until and unless such records were designated as "attorneys' eyes only." Despite RBC's demand for unreasonably heightened protection, it still refused to produce the minutes of the WAP Committee and instead produced 24 pages of blank pages marked "REDACTED" and "CONFIDENTIAL." As of the date of this writing, RBC has still refused to produce a privilege log required by law concerning the multitude of privileges it asserted to several of Plaintiff's production requests.

24. As the Administrative Record reflects, in response to Plaintiff's request for production of documents concerning the WAP Committee's denial and forfeiture of his benefits, RBC produced a single-page document entitled "RBC US Wealth

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

1   Accumulation Plan ("WAP") Committee, April 7, 2008, Re: Mr. Steven Behnhayon
2   v. RBC Capital Markets Holdings (USA) Inc." (AA 303.)   This document contains a
3   paragraph regarding the "Background" of the matter, a paragraph regarding the
4   "Current Status" of the matter, and a paragraph regarding entitled
5   "Recommendation." The "Recommendation" paragraph provides in full:

7                "To follow the WAP plan document the recommendation is to
8                deny the request for accelerated vesting and distribution.
9                Under section 4.4 "Termination due to Restructuring" In (sic)
                 the event a participant ceases to be employed by the Company
10               due to an organizational restructuring all Mandatory Deferred
11               Compensation in such participant's account shall become
                 vested.  There are no provisions in the plan document to
12               provide for accelerated vesting on company contributions or
13               company match." (AA 303.)

14   25.    After this single-page document, there are **24 blank pages** of the WAP
15   Committee's minutes stamped "**REDACTED**" and "**CONFIDENTIAL.**" (AA 304-
16   327.) Because of RBC's redactions, the Committee minutes, which are absolutely
17   critical to the issue of the Committee's abuse of discretion, are wholly devoid of
18   evidence relevant to the Committee's decision regarding Plaintiff's denial of benefits.
19   Thus, testimony from the PMK deposition is necessary to answer the following
20   questions, among others: Who on the Committee made the decision to deny
21   Plaintiff's benefits? Did the same people on the Committee also have any input or
22   influence in which sales employees were terminated when the Committee first learned
23   that RBC was going to be reducing its U.S. work force? How did the Committee
24   come to its determination to deny Plaintiff his benefits?  What methods, procedures,
25   and types of voting were used to make the decision?

26   26.    Further, as RBC raises as an affirmative defense that the WAP was a top
27   hat plan, it is necessary to examine the PMK as to the elements of the top hat
28   definition under ERISA, namely – How did the Committee define a "select group" to

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**

be covered by the WAP?   What percent of RBC's Fixed Income Capital Markets sales work force was invited to participate in the WAP?   What percent of RBC's Fixed Income Capital Markets sales work force actually participated in the WAP?   What were the methods by which the Committee deemed the WAP to be "unfunded" as it claims, despite the fact that Plaintiff's contributions did not come from RBC's general assets?   How did RBC maintain employee and company contributions to the WAP, i.e., were such contributions held in trust and secured from creditors, or were they part of RBC's general assets and thus unsecured?   If the company contributions were indeed unsecured, were the participating employees informed of this?   These questions are all critical to whether a top hat plan exists.   Further, these are all questions that RBC has failed to answer or address in its MSJ.   As these ERISA issues have gone unanswered by RBC, what was the focus of RBC's MSJ?

27.   Given the fact that RBC refuses to unveil the Committee minutes that reflect the Committee's rationale in deciding to deny Plaintiff the vesting and distribution of his WAP benefits, along with the fact that the deposition of RBC's PMK is scheduled after the deadline for the simultaneous Reply Briefs herein, a continuance of RBC's MSJ under Rule 56(f) is justified as the anticipated discovery will be fruitful and certainly aid Plaintiff in opposing the motion.

28.   If a continuance is not granted, Plaintiff will be irreparably harmed as he will be deprived of justly opposing RBC's MSJ.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.   Executed on August 5, 2009 at Costa Mesa, California.

_____
Kari M. Myron, Declarant

**PLAINTIFF'S REPLY BRIEF RE: ERISA ISSUES**