**BOHM, MATSEN, KEGEL & AGUILERA, LLP**
Kari M. Myron (Bar No. 158592)
Matthew J. Salcedo (Bar No. 237866)
695 Town Center Drive, Ste. 700
Costa Mesa, California 92626
Telephone:  (714) 384-6500
Facsimile:  (714) 384-6501
kmyron@bmkalaw.com

Attorneys for Plaintiff
STEVEN BENHAYON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BENHAYON, an Individual,<br><br>        Plaintiff,<br><br>        vs.<br><br>ROYAL BANK OF CANADA, a Canadian company, business form unknown; RBC WEALTH MANAGEMENT COMPANY, formerly RBC DAIN RAUSCHER, INC., business form unknown; THE ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN, formerly known as RBC Dain Rauscher Wealth Accumulation Plan; and, DOES 1 through 20,<br><br>        Defendants. | Case No.: CV08-06090 FMC (AGRx)<br>Assigned to Hon. Florence-Marie Cooper [Courtroom 750 (Roybal)]<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>*[Filed Concurrently with Plaintiff's Reply Brief Re: ERISA Issues and Plaintiff's Separate Statement of Genuine Issues of Material Fact]*<br><br>**DATE:**       Not set.<br>**TIME:**        Not set.<br>**CTRM:**       Not set. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Plaintiff STEVEN BENHAYON hereby submits the following Response to Defendants' Separate Statement of Uncontroverted Material Facts and Supporting Evidence in support of their Motion for Partial Summary Judgment pursuant to

1

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

Federal Rule of Civil Procedure, Rule 56.

## PRELIMINARY STATEMENT

On July 31, 2009, Plaintiff filed an *Ex Parte* Application for an Order Continuing the ERISA Reply Brief Due Date, or, in the Alternative, for an Order Shortening Time To Depose RBC's PMK and Shortening Time for RBC to Respond to Request for Production of Documents at Time of PMK Deposition. In a good faith effort to comply with this Court's Simultaneous Briefing Order and to preserve its rights in this litigation, Plaintiff hereby submits this Response to Defendants' Separate Statement of Uncontroverted Material Facts and Supporting Evidence. In so doing, Plaintiff does not waive its rights or arguments contained in the *Ex Parte* Application.

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1.    The Royal Bank of Canada U.S. Wealth Accumulation Plan (the "WAP") is a non-tax qualified, deferred compensation plan for a select group of management or highly-compensated employees of the Royal Bank of Canada and its participating subsidiaries (collectively "RBC"). | DISPUTED IN PART. The WAP does not cover a select group of management or highly-compensated employees of RBC. (AA 009.) Objections: Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v.* |

2

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | *Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd*, 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds*, 503 U.S. 318 (1992), *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 2.     The WAP is administered by a committee established under the WAP Plan Document (the "WAP Committee"). | UNDISPUTED.  Objections:  Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). |

3

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 3.     The WAP Committee has the full power and sole discretionary authority to make all determinations provided for in the Plan. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 4.     Benefits under the WAP are unfunded and are paid as needed solely from the general assets of the Royal Bank of Canada or one of its participating subsidiaries. | DISPUTED.<br><br>The WAP is not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets.  (SAA 00056-00072; AA 010-029.) |

4

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 5.    The WAP provides that employees are eligible to participate in the WAP only if they are part of the select group of management or highly compensated employees of RBC whose compensation or production otherwise exceeds a level demand appropriate by the WAP Committee and who are invited to become participants by the WAP Committee. | DISPUTED IN PART.<br><br>The WAP does not cover a select group of management or highly-compensated employees of RBC. (AA 009.)<br><br>Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.,* 796 F.2d 701 (4th Cir. 1986) *aff'd,* 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds,* 503 U.S. 318 (1992), *Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 6.     On March 13, 2001, a statement was filed with the United States Department of Labor registering the WAP as a "top-hat" plan within the meaning of 28 C.F.R. 2520.104-23. | DISPUTED.<br><br>On March 13, 2001, RBC filed a statement with the United States Department of Labor in order to satisfy the reporting requirements of 28 C.F.R. 2520.104-23, should the WAP be |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | considered a pension plan under ERISA. The statement was not filed with the United States Department of Labor registering the WAP as a "top-hat" plan within the meaning of 28 C.F.R. 2520.104-23. (AA 009.) |

Objections:

Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd*, 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds*, 503 U.S. 318 (1992), *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249 (D.C. MD. 1983). Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 7.     The amounts credited to a participant's individual account consist of: (i) voluntary deferrals of cash compensation ("Voluntary Deferred Compensation"), (ii) mandatory deferrals of cash compensation ("Mandatory Deferred Compensation"), and (iii) company matching contributions and bonuses ("Company Contributions"). | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 8.     Any participant who disagrees with any determination that has been made for payment under the WAP may present a claim to the WAP Committee and, if said claim is denied, may request a further review of the claim. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 9.     All decisions on claims and reviews of denied claims are made by the WAP Committee. | DISPUTED. As indicated at AA 301, non-WAP Committee members Gabriela Sikich and Todd Schnell were present at the Committee meeting to review Steven Benhayon's claim for benefits under the WAP.  As RBC has provided 24 blank pages marked "REDACTED" and "CONFIDENTIAL," Plaintiff disputes this alleged uncontroverted fact on the grounds that if said minutes become unveiled later in this litigation, Plaintiff submits that such minutes may demonstrate that non-WAP Committee members Gabriela Sikich and Todd Schnell participated in the review and decision of Steven Benhayon's claim for benefits under the WAP.  (AA 301.) Objections: Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), |

9

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs,* 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.,* 796 F.2d 701 (4th Cir. 1986) *aff'd,* 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds,* 503 U.S. 318 (1992), *Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.,* 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.,* 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.,* 920 F. Supp. 589 (D.C. N.J. 1996). |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 10.    The WAP provides that "Mandatory Deferred Compensation and Company Contributions in a participant's account shall vest on the date or dates determined by the Committee, in its sole discretion." | DISPUTED IN PART.<br><br>The 2003 WAP Plan does not recognize an exception to accelerated vesting or forfeiture of benefits upon an employee's separation from RBC employment due to termination without cause. (SAA 0056-00027.)<br><br>Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd*, 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds*, 503 U.S. 318 (1992), *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 11.    Except as expressly set forth in the WAP Plan Document, "all Company Contributions and Mandatory Deferred Compensation that are not vested on the participant's employment termination date shall be deemed forfeited, and such participant's account shall be appropriately reduced." | UNDISPUTED. |
| [NOT NUMBERED] The WAP plan document provides only three exceptions to the rule that unvested Company Contributions and Mandatory Deferred Compensation are deemed forfeited upon termination of the participant's employment **(i)** Mandatory Deferred Compensation and Company Contributions vest immediately upon the death or qualifying disability of a participant; **(ii)** Mandatory Deferred Compensation and Company Contributions vest immediately upon the | DISPUTED. The 2003 WAP Plan only recognizes forfeiture of matching contributions and Mandatory Deferred Compensation if a participant ceases to be an employee by RBC … due to his … gross or willful misconduct during the course of his … employment, including theft or commission of a gross misdemeanor or felony. (SAA 00062.) |

12

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| retirement of a participant who has satisfied the requirements for retirement under the WAP; and **(iii)** Mandatory Deferred Compensation (but not Company Contributions) vest in full in the event a participant ceases to be employed due to an organizational restructuring (as determined in the sole discretion of the WAP Committee). | Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs,* 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.,* 796 F.2d 701 (4th Cir. 1986) *aff'd,* 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds,* 503 U.S. 318 (1992), *Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249 (D.C. MD. 1983). Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.,* 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249, 1251 (D.C. |

13

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 12.     Benhayon's notional account balance under the WAP was $334,220.03 at the time his employment with RBC terminated on September 17, 2007. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 13.     The $334,220.03 remaining in Benhayon's WAP account on September 17, 2007 was entirely attributable to an "Employer Match" contribution for plan year 2003 and FICM WAP Bonus" contributions for plan years 2003 through 2006. | DISPUTED.<br><br>As indicated at AA 002, portions of the $334,220.03 derived from dividends income and interest accrued on account funds invested in Blended Fund Investments.  (AA 002.)<br><br>Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd*, 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds*, 503 U.S. 318 (1992), *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249 (D.C. MD. 1983). Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 14.    The "Employer Match" contribution to Benhayon's WAP account for plan year 2003 was subject to four-year cliff vesting. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 15.    The "FICM WAP Bonus" contributions to Benhayon's WAP account for plan years 2003 through 2006 were subject to four-year cliff vesting. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |

16

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 16.     Unless otherwise provided by the WAP Committee, all vesting periods begin on January 1 of the plan year following the plan year for which the contribution was made. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 17.     The Employer Match contribution to Benhayon's WAP account for plan year 2003 was scheduled to vest January 1, 2008. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |

17

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 18.   The FICM WAP Bonus contributions to Benhayon's WAP account for plan years 2003-2006 were scheduled to vest on January 1st of years 2008-2011, respectively. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 19.   Benhayon's employment with RBC ended on September 17, 2007. | DISPUTED IN PART.<br><br>Steven Benhayon was terminated without cause from RBC on September 17, 2007.  (AA 072, 074-075.)<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). |
| 20.   Benhayon did not separate from employment with RBC due to a death, disability or retirement. | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), |

18

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | 1101(a)(1). Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 21.    Under the terms of the WAP, an approved retirement requires that the Participant execute either a business transition agreement or a non-competition and non-solicitation agreement. | UNDISPUTED. At page 6 of the 2003 WAP (SAA 00061), "approved retirement" is defined under the Plan as "the retirement or termination of employment of a participant who (i) has been an employee of the Company or any participating subsidiary for 10 or more years at the time of separation or termination of employment, (ii) has entered into a non-competition, non-solicitation and related agreement in a form approved by the Committee and (iii) with respect to deferrals for all Plan years commencing on or after January 1, 2001, whose age upon Separation is at least fifty (50); provided that such vesting will be subject to forfeiture as set forth in the participant's non-competition agreement with the Company. Objections: Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 1101(a)(1). Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 22.    There was no evidence in the administrative record that Benhayon ever executed a business transition agreement or a non-competition and non-solicitation agreement. | UNDISPUTED. Objections: Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 23.    The $334,220.03 remaining in Benhayon's WAP account on September 17, 2007 was treated by the WAP as a forfeiture. | UNDISPUTED. Objections: Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Irrelevant to the issue of whether the WAP was set up in bad faith in that it |

20

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 24.   By letter dated November 9, 2007, Benhayon's counsel, Kari M. Myron, wrote to certain representatives of RBC, requesting an increase in the amount of severance pay offered to Benhayon and distribution of the balance remaining in Benhayon's WAP account. | UNDISPUTED.<br><br>Objections:<br><br>The issue of severance pay is irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>The issue of severance pay is irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 25.   By letter dated November 12, 2007, Benhayon's counsel wrote to certain representatives of the WAP, requesting that "the WAP Committee . . . accelerate[] vesting of any/all funds on deposit in [Benhayon's] WAP account, which are estimated to be $335,000.00." | UNDISPUTED.<br><br>Objections:<br><br>Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).<br><br>Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 26.  On December 7, 2007, the WAP Committee met and considered Benhayon's request for accelerated vesting of the amount credited to his WAP account at the time of his termination. | **DISPUTED IN PART.**

As indicated at AA 296, non-WAP Committee members Gabriela Sikich and Todd Schnell were present at the Committee meeting to review Steven Benhayon's request for accelerated vesting of the amount credited to his WAP account.  A portion of the document is blank and marked "REDACTED."  Plaintiff disputes this alleged uncontroverted fact (should this document in its entirety become unveiled later in this litigation) on the grounds that non-WAP Committee members Gabriela Sikich and Todd Schnell participated in the review and decision of Steven Benhayon's claim for benefits under the WAP.  (AA 296.)

Objections:

Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd*, 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds*, 503 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | U.S. 318 (1992), *Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.,* 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.,* 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.,* 920 F. Supp. 589 (D.C. N.J. 1996). |
| 27.    The WAP Committee denied Mr. Benhayon's request for accelerated vesting of the amount credited to his WAP account at the time of his termination. | DISPUTED IN PART.<br><br>As indicated at AA 296, non-WAP Committee members Gabriela Sikich and Todd Schnell were present at the Committee meeting to review Steven Benhayon's request for accelerated vesting of the amount credited to his WAP account.  A portion of the document is blank and marked "REDACTED."  Plaintiff disputes this |

23

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | alleged uncontroverted fact (should this document in its entirety become unveiled later in this litigation) on the grounds that non-WAP Committee members Gabriela Sikich and Todd Schnell participated in the review and decision of Steven Benhayon's claim for benefits under the WAP.  (AA 296.) |

Objections:

Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd,* 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds,* 503 U.S. 318 (1992), *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 28.     Benhayon's counsel was advised of the Committee's decision to deny his request for accelerated vesting of the amount credited to his WAP account at the time of his termination by letter dated December 11, 2007. | DISPUTED IN PART.<br><br>As indicated at AA 296, non-WAP Committee members Gabriela Sikich and Todd Schnell were present at the Committee meeting to review Steven Benhayon's request for accelerated vesting of the amount credited to his WAP account.  A portion of the document is blank and marked "REDACTED."  Plaintiff disputes this alleged uncontroverted fact (should this document in its entirety become unveiled later in this litigation) on the grounds that non-WAP Committee members Gabriela Sikich and Todd Schnell participated in the review and decision of Steven Benhayon's claim for benefits under the WAP.  (AA 296.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.,* 796 F.2d 701 (4th Cir. 1986) *aff'd,* 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds,* 503 U.S. 318 (1992), *Pane v. RCA Corp.,* 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs*, *supra, Carrabba v. Randalls Food Markets, Inc.,* 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249, 1251 (D.C. |

26

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 29.     Also by letter dated December 11, 2007, RBC advised Benhayon of his right to seek review of the WAP Committee's decision pursuant to section 7.4 of the WAP Plan Document. | UNDISPUTED.  Objections:  Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).  Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |
| 30.     By letter dated February 6, 2008, Benhayon's counsel submitted a Request For Reconsideration Of Denial Of Accelerated Vesting And Distribution. | UNDISPUTED.  Objections:  Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).  Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and distributions of WAP benefits to participants who are terminated without cause. |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 31.     At its meeting on April 8, 2008, the WAP Committee considered Benhayon's appeal of its December 7, 2007 decision. | DISPUTED.<br><br>First, as indicated at AA 303, the document is dated April 7, 2008 – not April 8, 2008.<br><br>Second, as indicated at AA 301, non-WAP Committee members Gabriela Sikich and Todd Schnell were present at the Committee meeting to review Steven Benhayon's claim for benefits under the WAP.  As RBC has provided 24 blank pages marked "REDACTED" and "CONFIDENTIAL," Plaintiff disputes this alleged uncontroverted fact on the grounds that if said minutes become unveiled later in this litigation, Plaintiff submits that such minutes may demonstrate that non-WAP Committee members Gabriela Sikich and Todd Schnell participated in the review and decision of Steven Benhayon's claim for benefits under the WAP.  (AA 303; AA 301.)<br><br>Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| | "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd*, 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds*, 503 U.S. 318 (1992), *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.*, 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.*, 920 F. Supp. 589 (D.C. N.J. 1996). |
| 32.    At its meeting on April 8, 2008, the WAP Committee affirmed its earlier decision to deny Benhayon's request to accelerate vesting of the employer contributions in his WAP account. | DISPUTED.<br><br>First, as indicated at AA 303, the document is dated April 7, 2008 – not April 8, 2008. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Second, as indicated at AA 301, non-WAP Committee members Gabriela Sikich and Todd Schnell were present at the Committee meeting to review Steven Benhayon's claim for benefits under the WAP.  As RBC has provided 24 blank pages marked "REDACTED" and "CONFIDENTIAL," Plaintiff disputes this alleged uncontroverted fact on the grounds that if said minutes become unveiled later in this litigation, Plaintiff submits that such minutes may demonstrate that non-WAP Committee members Gabriela Sikich and Todd Schnell participated in the review and decision of Steven Benhayon's claim for benefits under the WAP.  (AA 303; AA 301.)<br><br>Objections:<br><br>Assumes facts not in evidence – to wit, that the WAP is a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). The WAP is not a "top hat" plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). First, the number of WAP participants far exceeds the amount of employees permissible to constitute a "select group" under *Duggan v. Hobbs*, 99 F.3d 307 (9th Cir. 1996), *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir. 1986) *aff'd*, 922 F.2d 203 (4th Cir. 1991), *rev'd on other grounds*, 503 U.S. 318 (1992), *Pane v. RCA Corp.*, |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 868 F.2d 631 (3d Cir. 1989), and *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249 (D.C. MD. 1983).  Second, the WAP participants did not have the necessary bargaining power to affect or substantially influence the terms and conditions of the WAP under *Duggan v. Hobbs, supra, Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D. Tex. 1999). Third, the WAP was not a completely "unfunded" plan as it mandated contributions by its employee participants (e.g., Mandatory Deferred Compensation), which were not contributed by RBC, and did not come from RBC's general assets, as required under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1), *Belka v. Rowe Furniture Corp.,* 571 F. Supp. 1249, 1251 (D.C. Md. 1983), *Miller v. Eichleay Engineers, Inc.,* 886 F.2d 30 (3d Cir. 1989), and *Crumley v. Stonhard, Inc.,* 920 F. Supp. 589 (D.C. N.J. 1996). |
| 33.     Ms. Myron was notified of the WAP Committee's decision regarding Benhayon's appeal of its December 7, 2007 decision by a letter from Mr. Schnell dated April, 9, 2008. | UNDISPUTED.  Objections:  Irrelevant to the issue of whether the WAP is a top hat plan as defined under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).  Irrelevant to the issue of whether the WAP was set up in bad faith in that it fails to address the vesting and |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | distributions of WAP benefits to participants who are terminated without cause. |

## PLAINTIFF'S RESPONSES TO RBC'S ALLEGED CONCLUSIONS OF LAW

**RBC Claims:**

    1.    The decision of the RBC USA Wealth Accumulation Plan Committee (the "WAP Committee") denying Steven Benhayon's request for accelerated vesting and claim for benefits under the RBC U.S. Wealth Accumulation Plan (the "WAP") is reviewable in this Court only for an abuse of discretion.

**Plaintiff responds:**

    As more fully argued in Plaintiff's concurrently filed Reply Brief Re: ERISA Issues herein, the decision of the WAP Committee denying Steven Benhayon's request for accelerated vesting and claim for benefits under the WAP is not reviewable in this Court only for an abuse of discretion. Rather, as a conflict existed within the WAP Committee, the appropriate standard of review is 'modified abuse of discretion" where the Court should factor in the conflict that existed within the WAP Committee.

**RBC Claims:**

    2.    The WAP Committee did not abuse its discretion in denying Steven Benhayon's request for accelerated vesting and claim for benefits under the WAP.

**Plaintiff responds:**

    As more fully argued in Plaintiff's concurrently filed Reply Brief Re: ERISA Issues herein, the WAP Committee abused its discretion in denying Steven Benhayon's request for accelerated vesting and claim for benefits under the WAP in that Plaintiff was not terminated for gross or willful misconduct during his

32

1   employment with RBC. Rather, Plaintiff was arbitrarily terminated due to a reduction

2   in force.   As there is no recognized exception to accelerated vesting upon an

3   employee's separation from RBC employment due to termination without cause,

4   Plaintiff is entitled to the distribution of his due benefits.  As the WAP Committee

5   wholly ignored the provisions for distributions upon separation as set forth in the

6   2003 WAP Plan, the WAP Committee abused its discretion.

7

8   DATED: August 5, 2009         **BOHM, MATSEN, KEGEL & AGUILERA, LLP**

9

10                     By:

11                        Kari M. Myron

12                        Matthew J. Salcedo,
                           Attorneys for Plaintiff STEVEN

13                        BENHAYON

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE**