UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

In re                              )
STEVEN BENHAYON, an Individual,    )
                                   )
          Plaintiff,               )
                                   )
     vs.                           )   No. CV08-06090 FMC
                                   )        (AGRx)
ROYAL BANK OF CANADA, a            )
Canadian company, business form    )
unknown; RBC WEALTH MANAGEMENT     )
COMPANY, formerly RBC DAIN         )
RAUSCHER, INC., business form      )
unknown; THE ROYAL BANK OF         )
CANADA US WEALTH ACCUMULATION      )
PLAN, formerly known a RBC Dain    )
Rauscher Wealth Accumulation       )
Plan; and DOES 1 through 20,       )
                                   )
          Defendants.              )
_____)


DEPOSITION OF RULE 30(B)(6) WITNESS
FOR ROYAL BANK OF CANADA
GABRIELA SIKICH
(Pages 1 through 135)


Taken on Friday, August 28, 2009, at 8:05 a.m.



Reported by:  Lisa Moskowitz
              CSR No. 10816, RPR, CLR

Exhibit ___A___, Page ___2___

```
 1   term.  But does have any special meaning in your line of
 2   business?
 3           MS. CLAXTON:  I think the question is does it
 4   have any particular meaning.  With respect to the
 5   operation of the WAP?
 6           MR. SALCEDO:  That's correct.
 7           THE WITNESS:  It just means they have full
 8   power and authority as it relates to how the plan is
 9   operated and the design of the plan.
10   BY MR. SALCEDO:
11       Q.   Like you said earlier, I believe, though they
12   have full discretion, they call upon you at times to
13   walk them through certain aspects of the plan for
14   clarity and for their better understanding of the plan
15   terms?
16       A.   That's correct.
17       Q.   Okay.  Who, if you know, employees the
18   individual members of the WAP committee?
19       A.   We've got --
20           MS. CLAXTON:  I'm going to object.  It's vague
21   as to time.  Are you speaking about today?
22           MR. SALCEDO:  Let me back up because that's a
23   valid question.
24       Q.   Has the make-up of the WAP committee changed
25   from the inception of the plan to the present?
```

45

1    A.   Yes.

2    Q.   Why don't we start with that.  In 2003, if you
3  know, or 2002 rather, do you know the make-up of the
4  committee?

5         MS. CLAXTON:  Who were the members?

6         MR. SALCEDO:  Correct.

7         THE WITNESS:  I cannot answer exactly who are
8  the committee members for an exact period of time.  I
9  can respond to who the committee members were, but I
10 can't speak to a specific point in time.
11 BY MR. SALCEDO:

12   Q.   Okay.  Well, then would you be able to do so?
13 To tell me who the committee members were as to your
14 knowledge?

15        MS. CLAXTON:  Just in general from 2002 to
16 present?

17        MR. SALCEDO:  Yeah, because she stated she
18 can't break it down by year.

19        THE WITNESS:  It was Carmen Thiede.
20 BY MR. SALCEDO:

21   Q.   Can you spell that for me if you can?

22   A.   T-h-i-e-d-e.

23   Q.   Okay.

24   A.   There was Mike Cavanaugh.

25   Q.   Okay.

46

```
 1      A.   There was Jim Chapman.
 2      Q.   Chap or Chat?
 3      A.   Chapman with a P.  Mary Zimmer.
 4      Q.   Okay.
 5      A.   Dan Szabo, Lisa Sorenson, and Darryl Traweek.
 6      Q.   Can you spell that for one me?
 7      A.   I'll give it my best shot.
 8      Q.   Sure.
 9      A.   T-r-w-e-e-k.
10      Q.   T-r-w-e-e-k.
11      A.   I'm sorry.  T-r-a-w-e-e-k.
12      Q.   Traweek?
13      A.   Traweek.
14      Q.   And his first name was Darren?
15      A.   Darryl.
16      Q.   Darryl.  To your knowledge, ma'am, were any of
17   these individuals that you just set forth on the record
18   employed by -- this is where it gets complicated.  Do
19   you know who they were employed by?
20      A.   All of them were employed by RBC Wealth
21   Management except for Dan Szabo who is employed by RBC
22   Capital Markets.
23      Q.   So Dan Szabo was employed by the same entity
24   that employs you; is that correct?
25      A.   That's correct.
```

47

1     A.    RBC Capital Markets.

2     Q.    That is your employer?

3     A.    Yes.

4     Q.    Okay. So would you be the contact person as

5  we've stated before or the point person between the WAP

6  committee and the accounting group over at RBC Capital

7  Markets with regard to the liabilities of the WAP?

8     A.    That would be me.

9     Q.    Is it a fair statement that the WAP committee

10 has no information with regard to the liability of the

11 WAP? That's a function that you take on as your -- as

12 the plan manager?

13          MS. CLAXTON: Your question is whether the

14 committee has any knowledge with respect to the

15 liabilities?

16          MR. SALCEDO: Sure. Let's keep it at that, and

17 I'll break it down.

18          THE WITNESS: The committee -- it has not been

19 an item that the committee has reviewed. It is a firm

20 decision that -- an overall firm decision that this

21 liability will be completely and fully hedged.

22 BY MR. SALCEDO:

23    Q.    When you use -- I'm sorry. Go ahead. Were you

24 done with your --

25    A.    I'm done.

59

1   Q.   Okay.  Great.  When you say "the firm," who do
2   you mean by "the firm"?
3   A.   RBC Capital Markets.
4   Q.   Capital Markets, okay.  Is it a fair statement
5   that the RBC or that the WAP committee has no
6   involvement with regard to the accounting liabilities of
7   the WAP?
8   A.   They don't.  It's actually a decision made --
9   it's a company decision on whether you have a deferred
10  compensation plan and you want to hedge that liability.
11  That's not a WAP committee decision.  That's a company
12  decision.  Because technically these types of programs
13  do not have to be funded or hedged.
14       I mean it is really a business decision, and
15  it's really kind of an accounting decision to
16  determine -- to earmark the corporate dollars to fund
17  the liability.  That's a company accounting decision.
18  Because basically what you're doing is you're taking
19  corporate dollars and taking them out of use because
20  you're going to hedge that particular liability.
21  Q.   In this company or -- this company decision,
22  does it relate to the WAP's operation?
23       MS. CLAXTON:  I'm going to object that's vague
24  and ambiguous and unintelligible.
25       THE WITNESS:  I don't understand.

60

1           MS. CLAXTON:  I don't understand that question.
2    BY MR. SALCEDO:
3       Q.   Does the hedging of certain contributions that
4    are made by WAP participants to the WAP -- is that a
5    decision that's taken on by RBC Capital Markets?
6           MS. CLAXTON:  I'm going to object that that
7    lacks foundation and misstates her testimony.  You might
8    want to rephrase that.
9           THE WITNESS:  Could you rephrase that?
10   BY MR. SALCEDO:
11      Q.   Sure.  Let me read back -- let me see the
12   question that I asked.
13           You stated that hedging of the certain
14   contributions is a business decision; is that correct?
15          MS. CLAXTON:  I'll object that that misstates
16   her testimony.
17          MR. SALCEDO:  Can you read back that certain
18   testimony, ma'am.
19          (Record read.)
20   BY MR. SALCEDO:
21      Q.   Is that a correct statement?  That's your
22   correct testimony?
23      A.   That's correct.
24      Q.   Now, does the WAP committee have any input as
25   to the funding or as to the hedging of these funds that

61

```
 1   go into the WAP account?
 2       A.   State that again.
 3       Q.   Sure.  Does the WAP committee have any
 4   involvement with regard to the hedging of funds that go
 5   into the WAP account?
 6       A.   No, they do not.
 7       Q.   That's a completely -- that's a decision that
 8   is made, as you said, by the business.  That's a company
 9   decision.  Am I correct?
10       A.   That's correct.
11       Q.   But the WAP as you've stated -- the WAP
12   committee, rather, has full discretion and authority to
13   implement decisions regarding funding of the WAP?
14       A.   The operations of the WAP.
15       Q.   What do you mean by "operations"?
16       A.   Plan design, administration, claims.
17       Q.   So essentially -- correct me if I'm wrong.  The
18   company makes the decision as to the particular employee
19   and employer contributions.  Those are corporate dollars
20   you said; correct?
21       A.   Correct.
22       Q.   And those decisions are not made by the WAP
23   committee?
24       A.   That's correct.
25       Q.   And that's a correct statement with regard to
```
                                                              62

```
 1   all voluntary contribution components?
 2        A.   It includes anything as it relates to any
 3   contributions made into the plan including voluntary,
 4   mandatory, any company contributions.
 5        Q.   Okay.  Would that also involve employer bonus
 6   components?
 7        A.   That's correct.
 8        Q.   Okay.  Has there ever been a time during the
 9   inception of the WAP to present where you, in your
10   capacity as the PMK for this deposition, have determined
11   that the liabilities were such that it was unfeasible to
12   run or operate the WAP effectively?
13        A.   No.
14        Q.   Let's move on to category No. 4.  This is, "All
15   aspects of the funding of the WAP including but not
16   limited to issues related to the sources of the WAP's
17   funding such as general assets to use to fund the WAP,
18   if any, voluntary contribution components, mandatory
19   contribution components, employer matching components,
20   employer bonus components, and the segregation of the
21   voluntary contribution components, mandatory
22   contribution components and employer matching components
23   and employer bonus components of the WAP."
24             Do you have any knowledge as the PMK of this
25   deposition regarding the sources of the WAP's funding as
```

                                                              63

(GABRIELA SIKICH 8/28/09)

# REPORTER'S CERTIFICATE

The undersigned Certified Shorthand Reporter licensed in the State of California does hereby certify:

That the foregoing deposition was taken before me at the time and place therein set forth at which time the witness was duly sworn by me;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed, said transcript being a true copy of my shorthand notes thereof.

That the dismantling of the original transcript will void the reporter's certificate.

I further declare that I have no interest in the outcome of the action.

In witness whereof, I have subscribed my name this 10th day of September, 2009.

_____
LISA MOSKOWITZ
CSR NO. 10816, RPR, CLR

DOKICH COURT REPORTERS, INC.
(800) 720-9679         Exhibit A , Page 11